ROBERT S. BENDELL, Respondent, *v.* FLORINDA DE DOMINICIS, Appellant.

(Argued June 7, 1929; decided July 11, 1929.)

*Philip J. Cirillo* for appellant. The trial court erred in refusing to grant the motion of defendant for a nonsuit and for the direction of a verdict. The verdict of the jury was contrary to law. (*Roman* v. *Lobe,* 243 N. Y. 51; *Goldin* v. *Shankroff,* 211 N. Y. Supp. 569; *Stake & Co., Inc.,* v. *Roth,* 154 N. Y. Supp. 213; *Morgan Munitions Co.* v. *Studebaker Corp.,* 226 N. Y. 94.)

*Maurice Freedman* for respondent. The respondent's cause of action arose with the signing of the contract of purchase and sale between appellant and the buyer. (*Roman* v. *Lobe,* 213 App. Div. 162; *Glentworth* v. *Luther,* 21 Barb. 145; *Folinsbee* v. *Sawyer,* 157 N. Y. 196; *Loeffler* v. *Friedman,* 26 Misc. Rep. 750; *Forrester* v. *Price,* 6 Misc. Rep. 308; *Byrne* v. *Korn,* 25 Misc. Rep. 509; *Haase* v. *Schneuble,* 112 App. Div. 336; *Levy* v. *Klottman,*

11 Misc. Rep. 372; *Thompson & Co., Inc.,* v. *Madison Square Corp.,* 225 App. Div. 521.) The respondent was a duly licensed real estate broker at the time his cause of action arose within the meaning of article 12-A, section 442-d, of the Real Property Law, and, therefore, may bring and maintain this action. (*Roman* v. *Lobe,* 213 App. Div. 162; 243 N. Y. 51; *Blank* v. *Longenberger,* 132 Misc. Rep. 374; *Crilly* v. *Young,* 152 Ill. App. 72; *People ex rel. Freligh* v. *Matsell,* 94 N. Y. 179; *City of Rochester* v. *Coe,* 25 App. Div. 300; *Wehrenberg* v. *N. Y., N. H. & H. R. R. Co.,* 124 App. Div. 205; *Cody* v. *Dempsey,* 86 App. Div. 335; *Sinnott* v. *German-American Bank,* 164 N. Y. 386; *Gay* v. *Seibold,* 97 N. Y. 472; *Weingast* v. *Rialto Pastry Shop,* 243 N. Y. 113.)

POUND, J. On the facts as found by the jury it appears that plaintiff, prior to May 1, 1928, resided at 1060 Madison avenue, Albany, N. Y., and was a tenant of the defendant; there in the year 1926 defendant employed him to sell her property consisting of two parcels known as Nos. 1058 and 1058-a Madison avenue and Nos. 1060, 1062 and 1064 Madison avenue; that sometime thereafter plaintiff procured a prospective purchaser, Lazarus, for the second of the parcels; that Lazarus offered $77,500 therefor, which offer was not then accepted; that on November 15, 1927, a written contract was entered into between defendant and Lazarus, without the further intervention of plaintiff, for the purchase and sale of the property for the sum of $77,500; that the transaction was closed and the purchase money was paid in January, 1928.

Plaintiff was not a licensed real estate broker from September 30, 1926, to November 7, 1927, but was a duly licensed broker when he was first employed and also when the contract of sale between defendant and Lazarus was entered into on November 15, 1927. He has recovered a judgment for commissions. The question is whether he was entitled to maintain an action therefor under the pro-

visions of article 12-A of the Real Property Law (L. 1922, ch. 672, amd. by L. 1926, ch. 831; Cons. Laws, ch. 50), sections 440, 440-a, 442-d, 442-e, which read as follows:

"§ 440. Definitions. Whenever used in this article 'real estate broker' means any person, firm or corporation, who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate, or negotiates, or offers or attempts to negotiate, a loan secured or to be secured by a mortgage or other incumbrance upon or transfer of real estate. * * *

"§ 440-a. License required for real estate brokers and salesmen. On and after the first day of October, nineteen hundred and twenty-two, no person, copartnership or corporation shall engage in or follow the business or occupation of, or hold himself or itself out or act temporarily or otherwise as a real estate broker or real estate salesman in any city of the state * * * without first procuring a license therefor as provided in this article. * * *

"§ 442-d. Actions for commission; license prerequisite. No person, copartnership or corporation shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker or real estate salesman on the date when the alleged cause of action arose.

"§ 442-e. Violations. Any person who violates any provision of this article shall be guilty of a misdemeanor. The commission of a single act prohibited by this article shall constitute a violation hereof. In case the offender shall have received any sum of money as commission,

compensation or profit by or in consequence of his violation of any provision of this article, he shall also be liable to a penalty of not less than the amount of the sum of money received by him as such commission, compensation or profit and not more than four times the sum so received by him, as may be determined by the court, which penalty may be sued for and recovered by any person aggrieved and for his use and benefit, in any court of competent jurisdiction. It shall be the duty of the court or judge, upon a conviction for a violation of any provision of this article, and within ten days thereafter, to make and file with the department of state a detailed report showing the date of such conviction, the name of the person convicted and the exact nature of the charge."

The courts below have proceeded on the theory that the meeting of minds of vendor and purchaser on the terms of sale occurred on the date of the signing of the contract of purchase and sale; that the plaintiff was then a licensed real estate broker and, as that was " the date when the alleged cause of action [for commissions] arose," he maintained the burden of proof that he was a licensed real estate broker when such cause of action arose, within the provisions of section 442-d, and is entitled to recover. Plaintiff has, however, failed to show that he was a licensed real estate broker at the time he rendered the services alleged in the complaint and proved on the trial. If he, while unlicensed, engaged in a single act prohibited by the article, he was guilty of a misdemeanor. His contention is that he is, nevertheless, subject only to the penalties imposed by law and that his right to recover his commissions is not affected by the statute. He relies on the principle enunciated as follows: " It is true that where the statute prohibits the doing of a particular thing, the courts will not aid in enforcing contracts made in violation of the law, but where a contract, not unlawful in itself has been executed, and the parties have enjoyed the benefits of the contract, the mere fact that one of the

parties has violated a penal statute in the approach to the contract, will not prevent a court from enforcing payment." (*Cody* v. *Dempsey*, 86 App. Div. 335; cited in *Morgan Munitions Co.* v. *Studebaker Corp.*, 226 N. Y. 94, 99.) Thus it was held in *Gay* v. *Seibold* (97 N. Y. 472) that a violation of a statute prohibiting the use of the words " and company " except to represent an actual partner did not protect those who had obtained credit from the firm from payment of their just debts, and in *Sinnott* v. *German-American Bank* (164 N. Y. 386) it was held that the same statute had no operation on an executed agreement. The purpose of the statute was to prevent fraud by the use of the assumed name, not to permit others to take advantage of the violation of the statute to escape their obligations.

But the doing of the particular thing, the rendering of services by plaintiff under his contract of employment as a real estate broker, when unlicensed, was in itself illegal. One purpose of the statute was to mark off " the business of the broker as distinct from occupations which by general acquiescence are pursued of common right without regulation or restriction," and to make illegal the acts of the unlicensed in the real estate broker's field. (*Roman* v. *Lobe*, 243 N. Y. 51.) Plaintiff in this case, having been left out of the picture from the time he made the offer of Lazarus to the time of the execution of the contract of sale, could not establish his case upon his contract of employment without proving the criminal nature of his services in obtaining Lazarus as a prospective purchaser for the real estate in question. (*Morgan Munitions Co.* v. *Studebaker Corp.*, *supra*.) He seeks to avoid the effect of the illegal character of his services when rendered because, after his services ceased, the parties came together on terms first presented to the defendant by him. He comes not within the letter or the spirit of the statute. Parties are not allowed to cheat their licensed brokers by discharging them after a sale has been

effected through their agency and at the same time gathering the fruits of their labor (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 382), but this case is quite different. Out of services illegally rendered comes a lawful contract of sale. The question is whether, assuming for the purpose of the argument that plaintiff was the producing cause of the agreement although he was absent when it was actually concluded, his claim for compensation is outlawed by the criminal nature of such services. The answer seems conclusively in the affirmative. Illegality is a defense to the action independently of the burden of allegation and proof contained in section 442-d. Otherwise an unlicensed broker might negotiate sales with impunity up to the point of a complete agreement and then obtain his license for the purpose of recovering his commissions on the execution of a formal contract. The law is not so toothless.

Another reason sufficiently deprives plaintiff of his remedy if it were necessary to invoke it. It does not appear on what date the alleged cause of action arose. Commissions ordinarily become due when the broker produces to his principal a party ready, willing and able to purchase on the terms of sale authorized or accepted by such principal. (*Davidson* v. *Stocky*, 202 N. Y. 423.) No presumption arises that the commissions became due on the date when the formal contract of purchase and sale was executed. The burden is on plaintiff in any event to show that he was a licensed broker on the date when his commissions were due. He obtained his license seven days before the contract was signed and after some intimation had come to him that the deal had been closed.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J., CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.