STATE EX REL. REYNOLDS, Attorney General, Plaintiff, v. DINGER and others (Wisconsin Real Estate Brokers' Board), Defendants.

*June 6—June 27, 1961.*

For the plaintiff there were briefs and oral argument by *John W. Reynolds,* attorney general, and *Warren H. Resh,* assistant attorney general, attorneys, and *F. Trowbridge vom Baur* of Washington, D. C., of counsel.

For the defendant Wisconsin Real Estate Brokers' Board there was a brief by *Quarles, Herriott & Clemons,* special counsel, attorneys, and *Maxwell H. Herriott, L. S. Clemons,* and *David S. Ruder* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott* and *Mr. Ruder.*

For the defendant Wisconsin Association of Real Estate Brokers there was a brief and oral argument by *E. L. Wingert* of Madison.

A brief *amicus curiae* was filed by *F. Trowbridge vom Baur* of Washington, D. C., *Wayland B. Cedarquist* of Chicago, Illinois, *Jonathan F. Ells* of Winsted, Connecticut, *Terrell Marshall* of Little Rock, Arkansas, *William L. Murphy* of Los Angeles, California, *Holcombe H. Perry* of Albany, Georgia, *Raymond Reisler* of Brooklyn, New York, and *Melvin F. Adler* of Fort Worth, Texas, for the American Bar Association.

A brief *amici curiae* was filed by *Joling & Hubbard* of Kenosha, for the Kenosha County Bar Association, and *Heft, Coates, Boggs & Heft* of Racine, for the Racine County Bar Association.

BROWN, J. In 1919 the legislature created the Real Estate Brokers' Board and charged it, among other things, with the supervision, regulation, and control of the business or occupation of real-estate brokers. This agency has the rule-making power "to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation." Sec. 227.014, Stats.

Under the ostensible authority of that power the Wisconsin Real Estate Brokers' Board promulgated its Rule, sec. REB 5.04, 5 Wis. Adm. Code, for the guidance and government of licensed real-estate brokers who by statute are subject to the board's jurisdiction. Resting on the allegations of fact contained in the complaint, the plaintiff charges that the rule is an invalid exercise of the board's administrative rule-making power because the Rule "purports to authorize its licensees to give legal advice or services, exceeds the bounds of correct interpretation of the agency's rule-making authority, and constitutes an attempted usurpation of the inherent and exclusive power of the supreme court of Wisconsin: (1) To determine what is the practice of law, (2) to establish the qualifications of persons entitled to engage in such practice, (3) to license these persons who have qualified themselves, by education, training, examination, and character to exercise such franchise, and (4) to exercise supervisory and disciplinary control over such licensees."

Defendants' answers deny the conclusions asserted by the complaint and in affirmative defense allege additional facts which will be referred to later. Defendants' pleadings conclude that Rule, sec. REB 5.04, is valid and the board has not usurped the prerogatives of the court.

The state's brief concedes:

"The plaintiff has demurred to the separate answers of each of the defendants and to all alleged defenses therein on

the grounds that neither of the answers state a defense to the complaint.

"Under familiar principles the effect of the demurrer to the answers is to admit facts well pleaded but not the legal conclusions of the pleader. *Mitchell v. City of Horicon* (1953), 264 Wis. 350, 59 N. W. (2d) 469; *Olson v. Ortell* (1953), 264 Wis. 468, 59 N. W. (2d) 473.

"A demurrer to an answer will reach new matter pleaded as a defense. *Selts Investment Co. v. Baireuther* (1930), 202 Wis. 151, 231 N. W. 641.

"It relates back to the complaint and tests its sufficiency. *Stephens v. Wheeler* (1927), 193 Wis. 164, 213 N. W. 464."

Material to this case, sec. 256.30, Stats., declares:

"(1) Every person, who without having first obtained a license to practice law as an attorney of a court of record of Wisconsin, as provided by law, shall practice law within the meaning of sub. (2) of this section, or hold himself out as licensed to practice law as an attorney within the meaning of sub. (3) of this section, shall be guilty of a misdemeanor, and upon conviction, shall be punished by a fine of not less than $50 nor more than $500 or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment, in addition to his liability to be punished as for a contempt.

"(2) Every person who shall appear as agent, representative, or attorney, for or on behalf of any other person, or any firm, copartnership, association, or corporation in any action or proceeding in or before any court of record, court commissioner, or judicial tribunal of the United States, or of any state, or who shall otherwise, in or out of court for compensation or pecuniary reward give professional legal advice not incidental to his usual or ordinary business, or render any legal service for any other person, or any firm, copartnership, association, or corporation, shall be deemed to be practicing law within the meaning of this section."

(Note that sub. (2) of the statute exempts from the prohibition the rendering of professional legal advice or services

when such advice or service is incidental to the usual and ordinary business of the person furnishing the service or advice. Note, too, that Rule, sec. REB 5.04 (1), hereinafter set out, authorizes a broker to use and fill out a standard form only when he does so as a broker incidental to his trade or business and without extra compensation.)

Sec. 2, art. VII, Wisconsin constitution, declares:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace. . . ."

The constitution does not prescribe the limits of what is or is not the judicial power of the state.

In 1919, with subsequent modifications of language which are immaterial for present purposes, the legislature enacted what presently appears as sec. 235.16, Stats., which reads:

"FORMS APPROVED AND RECOMMENDED; RECORDING FEES. (1) The several forms of deeds, mortgages, land contracts, assignments, satisfactions, and other conveyancing instruments prepared or approved by the Wisconsin state register of deeds association, denominated 'State of Wisconsin' forms and numbered 1 to 60, both inclusive, and filed with the secretary of state, are approved and recommended for use in the state of Wisconsin. Such forms shall be kept on file with and preserved by the secretary of state as a public record. "(2) The secretary of state shall, upon sufficient copies thereof being furnished to him without expense, thereupon certify the same to be correct copies of the forms on file in his office, approved by this section, and transmit a set of the same to each register of deeds in the state of Wisconsin; and each such register of deeds shall thereafter preserve the same on file in his office for the convenient use of the public."

On November 30, 1960, defendant board rescinded its former Rule, sec. REB 5.04, and in its place adopted a more-detailed new Rule, sec. REB 5.04, with which we are presently concerned. This Rule is as follows:

"Sec. REB 5.04 LEGAL ADVICE OR SERVICES. (1) A real-estate or business-opportunity broker in transactions in which he is acting as a broker and incidental to his trade or business may use a standardized contract in a form prepared or approved by this board, or as set forth in sec. 235.16, Wis. Stats. Said broker may complete said forms by filling in the blank spaces to show the parties and the terms of the transaction. Said forms shall not, however, be prepared by a salesman.

"(2) Real-estate or business-opportunity brokers, in transactions in which they are acting as a broker may use standardized forms, as set forth in subs. one (1), of deeds, land contracts, leases, options, mortgages, assignments of mortgages and land contracts, releases of mortgages, chattel mortgages, bills of sale, conditional sales contracts and other instruments of a similar nature, provided, however, that such are appropriate and incidental to transactions in which they act as licensed brokers, and that said brokers receive no extra compensation for filling in or completing such forms. The brokers may not do so in any other transactions. Said forms shall not, however, be prepared by salesmen.

"(3) Real-estate, business-opportunity, or cemetery brokers and their salesmen may, in transactions in which they are acting as licensees of this board, use standardized forms, approved by this board or as set forth in sec. 235.16, Wis. Stats., of offer to purchase and listing contracts and may complete them by filling in the blank spaces to show the parties, descriptions, and terms necessary.

"(4) A licensee of this board may not make a separate charge for completing any standardized forms, or may not prepare such forms for persons in transactions in which they are not acting as a licensee, unless they are themselves one of the parties to the contract or instrument.

"(5) At no time may a licensee of this board give advice or opinions as to the legal rights of the parties as to the legal effect of instruments to accomplish specific purposes or as to the validity of title to real estate; and they may not prepare reservations or provisions to create estates for life or in remainder or any limited or conditional estates or any other

form of conveyance than a direct present conveyance between the parties as provided for in standardized approved forms to be effective upon delivery.

"(6) Any licensee who violates the foregoing provisions of this rule shall be in violation of sec. 136.08 (2) (i), Wis. Stats., and deemed to be incompetent to act as a broker or salesman in such manner as to safeguard the interests of the public."

"The adoption of the above rule shall take effect on January 1, 1961, as provided in sec. 227.023, Wis. Stats."

The real questions at issue are (1) whether the completion and use of the standardized forms by brokers in transferring the titles of the real estate of their clients is the practice of law, and (2) if such completion and use *is* the practice of law, may the board authorize such practice by their licensed brokers.

The appendix submitted with plaintiff's brief contains a standard form of deed and mortgage and everyone who has been in the general practice of law, as each justice on this court has been, is familiar with some or all of the 60 standard forms pertaining to real-estate transactions prescribed by sec. 235.16, Stats., *supra*. It is apparent to us and, we think, to everyone who engages in conveyancing real estate, that blank spaces are left in the forms for the use of the conveyancer (in this case, the broker), to insert language appropriate to the particular situation and desires of the parties. To complete the form the broker must evaluate the information given him by one or both parties to the transaction and from that information he must select which one of the 60 approved standard forms is most suitable to carry out the purpose of his client. The broker must then determine whether or not additional provisions should be written into the blank spaces, and if addition is necessary what terms shall be used.

The board furnishes a pamphlet of 111 pages to each prospective broker. A copy of it is included in the appendix. The pamphlet bears on its cover:

"WISCONSIN REAL ESTATE LAW

"By

"Wisconsin Real Estate Brokers' Board"

This pamphlet briefly and rather generally informs the candidate for broker's license of legal problems and their solution in the complexities of real-estate transactions between vendor and purchaser, tenants in common, joint tenants, curtesy, dower, and homestead rights, lessor and lessee, mortgagor and mortgagee, land contracts, landlord and tenant, estates in realty, and subsidiary subjects. We saw this booklet before, in *Wall v. Wisconsin R. E. Brokers' Board* (1958), 4 Wis. (2d) 426, 90 N. W. (2d) 589. This official publication by the board for the guidance of the broker in, among his other functions, the use of the standard forms, compels the conclusion of law that the board's Rule, sec. REB 5.04, contemplates a requirement of knowledge by the real-estate broker *and his application* of not only the legal general principles held in common knowledge but the legal refinements of transfers or modifications of title to or interests in real estate. From perusal of the forms, the Rule, and the booklet's short course in real-estate law we can have no doubt that when a broker avails himself of the permission the Rule gives him to select, complete, and use one or more of the standard forms to accomplish his client's purpose to transfer title to real estate or an interest therein he is thereby expected to practice and does practice law.

In *In re Integration of Bar* (1958), 5 Wis. (2d) 618, 622, 93 N W. (2d) 601, we said that, ". . . the primary duty

of the courts as the judicial branch of our government is the proper and efficient administration of justice. . . . The practice of the law in the broad sense, both in and out of the courts, is such a necessary part of and is so inexorably connected with the exercise of the judicial power that this court should continue to exercise its supervisory control of the practice of law."

In *New Jersey State Bar Asso. v. Northern New Jersey Mortgage Asso.* (1956), 22 N. J. 184, 123 Atl. (2d) 498, the supreme court of New Jersey, speaking through Chief Justice VANDERBILT, held that the constitutional power of the supreme court over admissions to practice law and discipline of persons admitted is generally conceded to carry with it the power to prohibit laymen from practicing law. Similarly in *People v. Peoples Stock Yards State Bank* (1931), 344 Ill. 462, 472, 176 N. E. 901, the Illinois court noted that the constitution of the state vests the judicial power solely in the courts and by implication, then, the court has jurisdiction over admission to the bar and may discipline attorneys for misconduct. Having power to determine who shall practice and who shall not, the court said it necessarily follows that the court may enforce rules against offenders even though the offenders have not been licensed. "Of what avail is the power to license in the absence of power to prevent one not licensed from practicing as an attorney?"

Dictum in *In re Cannon* (1932), 206 Wis. 374, 395, 240 N. W. 441, strongly supports defendants' contention that this court has no control whatever over the practice of law and its practitioners outside the actual courts of law and equity. There we said:

". . . we admit that courts have no concern with the qualifications of lawyers except in so far as they are permitted to participate in the administration of the law in actions and pro-

ceedings in courts of law and equity. If the legislature desires to classify attorneys at law, we are free to say that courts would not be concerned with the qualifications of those permitted to perform legal services or to give legal advice which has nothing to do with the administration of the law in actions and proceedings in courts of law and equity. The legislature may establish such qualifications as it chooses for those who are permitted to act as conveyancers, examiners of title, organizers of corporations, or any other type of legal services which does not give them power to influence the course of justice as administered by the courts."

In the *Cannon Case*, by statute, the legislature attempted to restore a license to practice law to a person whose license had been revoked for misconduct. We held that the admission of a person to practice law is constitutionally an exclusive power of the court and the attempt to exercise it by the legislature is a usurpation of the court's function and is unconstitutional and void. There was no question before the court in the *Cannon Case* concerning lay conveyancers or other persons referred to in the excerpt just quoted—and we have nothing to overrule in the *Cannon* decision. We do, however, expressly disavow the language and the thought contained in it that the court's interest in and powers of regulation and control of the practice of the law do not embrace and include the activities of persons, not licensed as attorneys, who may practice law outside of actions and proceedings in court. On the contrary, we hold that such broad power over the practice of law is a judicial power vested in the courts by sec. 2, art. VII of the state constitution.

If the broker's selection and completion of standard forms resulting in a conveyance of real estate *is* practice of the law, the next question is whether such practice as permitted to brokers by Rule, sec. REB 5.04, is an illegal practice of law. Such practice does not violate the penal statute of sec. 256.30, *supra,* since the statute does not forbid the giving of professional legal advice and service by a person when incidental

to his usual and ordinary business. If this is a forbidden practice it must be because the court forbids it. If the court does not forbid a practice well known to it, the board's recognition and approval of it is not a usurpation of a function, power, or authority exclusively vested in the court by the state constitution. Such recognition and approval involve no threat to, or conflict with, the court's regulation, discipline, and control of all who assume to practice law whether inside or outside the courts.

Other branches or departments of government by statute, rule, or regulation may aid but not thwart the court in its exercise of the court's constitutional powers. For an example of aid, see sec. 256.30 (1), Stats., *supra,* imposing penalties for practicing law without a license. For an example of an attempt to thwart the court see the statute in the *Cannon Case, supra.* In the application of the proposition that the legislature may properly aid but may not obstruct the court in its own exclusive sphere, we reach the particular practices to which Rule, sec. REB 5.04, refers—the selection and completion of the standardized forms by the broker in the ordinary course of his business serving his patron.

The Rule is clearly designed for the regulation of real-estate brokers only, over whom the legislature has given the board jurisdiction. We will not gratuitously presume that the board had any intention to interfere with or to usurp the court's exclusive function nor do we think the board has done so.

We find from the defendants' answers, and the fact is conceded by the demurrer, that prior to 1919 real-estate brokers customarily drafted or completed statutory forms approved by ch. 316, Laws of 1874, or other forms similar to those designated in the Rule and on request informed parties of the legal effect of such documents, which activities and practices were well known to the legislature, lawyers, and the public. Sixty forms were approved "for the con-

venient use of the public" by ch. 584, Laws of 1919, and the board was created by ch. 656, Laws of 1919. After January 1, 1920, no person could engage in the business or occupation of a real-estate broker or salesman without being first licensed as such. In addition to such allegations of fact we could take judicial notice that every member of this court, and lawyers, legislators, and the public generally knew of the long-continued practice of the brokers to use such forms even more freely than the Rule now permits. The answers also allege and the demurrer concedes it to be the fact that in 1945 the Wisconsin Bar Association and the Wisconsin Association of Real Estate Brokers entered into an agreement providing:

"1. The realtor shall not practice law or give legal advice directly or indirectly; he shall not act as a public conveyancer, nor give advice or opinions as to the legal effect of legal instruments, nor give opinions concerning the validity of title to real estate, and he shall not prevent or discourage any party to a real-estate transaction from employing the services of a lawyer.

"2. The realtor shall not undertake to draw or prepare documents fixing and defining the legal rights of parties to a transaction. However, when acting as broker, a realtor may (draw) (use) the purchase contract and such instruments of conveyance as may be required in connection with property in which he has acted as broker, to wit: Such instruments as are contemplated and permitted by sec. 256.30 (2) of the Wisconsin statutes."

From the very beginning, the custom of the real-estate broker has been to use the forms readily procurable such as those now approved and standardized in sec. 235.16, Stats. Of course a violation of the law does not attain legality by lapse of time. On the other hand, the acquiescence of the bar and the courts in a practice for some one hundred years may be persuasive that at least the practice has not been unauthorized. Otherwise, it may be supposed that the courts

would have found it out and would not have shirked a duty to abolish it.

The attorney general brushes off the long-continued practice as a relic of frontier days which we should now bring to an end. The court's experience does not show us that the practice has outworn it usefulness, nor has danger and expense to the public in any substantial degree resulted from it. The more-stringent restrictions of the new Rule, sec. REB 5.04, are well calculated to protect the public still further. A present declaration that only licensed attorneys may use the forms in the manner hereinbefore discussed would destroy the time-honored method of conveyancing which in the main appears to us to have worked well in the public interest. The slight improvement to be expected in the usual course of conveyancing by having standard forms filled out by a member of the bar is offset by the inconvenience to the public of preventing the licensed broker from acting as the Rule permits. *Cowern v. Nelson* (1940), 207 Minn. 642, 647, 290 N. W. 795, reached a similar conclusion and rested its decision in favor of the brokers on the ground of comity between the judicial and legislative branches of government. In the matter of public welfare the court said:

"It is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic. Viewing the problem before us in that light, we do not think it would be in the interest of the public welfare to restrain brokers from drafting the ordinary instruments necessary to effectuate the closing of the ordinary real-estate transaction in which they are acting. We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the great public inconvenience which would follow

if it were necessary to call in a lawyer to draft these simple instruments."

We are obliged to the able and exhaustive briefs submitted on each side of the controversy. We cannot agree with any of the advocates on every point but we have learned much from all of them and thank them for their assistance.

We conclude that Rule, sec. REB 5.04, includes provisions which permit to a limited extent the practice of the law by certain nonlawyers; that the regulation of the practice of the law is a judicial power and is vested exclusively in the supreme court; that the practitioner in or out of court, licensed lawyer or layman, is subject to such regulation; that whenever the court's view of the public interest requires it, the court has the power to make appropriate regulations concerning the practice of law in the interest of the administration of justice, and to modify or declare void any such rule, law, or regulation by whomever promulgated, which appears to the court to interfere with the court's control of such practice for such ends. Further, although we have the power to declare void Rule, sec. REB 5.04, in so far as it affects the practice of law, we do not use the power in this instance because we, ourselves, consider the rule a salutary one which in its essentials continues a practice of laymen which we have long tacitly permitted and which has worked reasonably well. The Rule has not enlarged the practice of the law by laymen which we have hitherto permitted. When we consider that such practices should be discontinued it will be time for us to use our power. It is not required now.

*By the Court.*—Demurrer overruled. Action dismissed.

HALLOWS, J. (*dissenting in part*). I must respectfully dissent from that part of the majority opinion which holds Rule, sec. REB 5.04, valid and the court at this time should not exercise its power to prevent the unauthorized practice

of law by real-estate brokers. If the Wisconsin Real Estate Brokers' Board promulgated its Rule, sec. REB 5.04, under the authority of sec. 227.014, Stats., the Rule is void. That section provides agencies may adopt rules interpreting provisions of the statutes enforced or administered by them as they consider to be necessary to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation. Rule, sec. REB 5.04, does not interpret any provision of a statute which the Real Estate Brokers' Board enforces or administers, nor is it necessary to effectuate the purpose of any such statute. Certainly, sec. 256.30, relied on, is not administered or enforced by the board. This section is a penal statute, creating penalties for practicing law without a license and for that purpose, providing what constitutes the practice of law. Neither can the Rule be sustained under sec. 136.04 (1) which empowers the board to promulgate rules and regulations for administering that chapter and for the performance of the board's duties and functions.

Regulatory agencies whose membership is composed predominately of persons from the industry or profession which they regulate tend to identify themselves with the business or profession which they are supposed to regulate rather than with the interest of the public. The brokers' board is composed of three persons, at least two of whom are real-estate brokers. In its scope, purpose, and natural effect, Rule, sec. REB 5.04, is more in the interest of the licensees of the board than in the public interest.

The majority opinion points out that the Rule does not violate sec. 256.30, Stats., for the reason that brokers do not charge for drawing up the legal documents and the custom of preparing such documents has become incidental to the broker's usual and ordinary business. Preparing the legal documents allowed by the Rule is no necessary part of a

broker's business. His commission is earned and his business performed when he has procured a ready, willing, and able buyer. The majority opinion reasons that although the rule allows brokers to practice law, the long acquiescence by the bar and this court is persuasive the practice is not unauthorized. Acquiescence for a long period of time does not change the nature of the practice complained of. The majority opinion further states that had the practice been unauthorized, it might be supposed this court would have found it out by itself and would not have shirked a duty to abate the offense. This court does not employ investigators to ferret out unauthorized practices of the law. We are not an investigatory body. When such matters are brought to our attention, we take notice of them, as we did in *Drugsvold v. Small Claims Court* (1961), 13 Wis. (2d) 228, 108 N. W. (2d) 648.

I disagree with the statement that the court's experience does not show the practices indulged in by real-estate brokers have outworn their usefulness or that no substantial danger to the public has resulted. What might have been overlooked in the early days of this state in the type of society which then existed should not be countenanced in a much-more complex society which exists today. For example, fifty years ago— even twenty-five years ago, whether a husband ought to hold real estate in joint tenancy with his wife was a fairly simple question—not so today if one has any understanding of tax laws. The completion of forms by brokers may have some usefulness, but it is a dangerous usefulness today, primarily for the benefit of the brokers, not the public. The reported opinions of this court contain many cases of the danger of allowing lay people to practice law in the conveyance field. The most-recent example is *Breeden v. Breeden* (1959), 6 Wis. (2d) 149, 154, 93 N. W. (2d) 854, involving a deed in joint tenancy, in which case we stated:

"This is another unfortunate case of persons following the advice of another lay person rather than obtaining competent legal advice from an attorney. This is an unfortunate situation but not grounds for relief."

If, on the grounds of public policy, this court is going to allow brokers to practice law just a little bit, that practice should be restricted to preparing the option or offer to purchase. This is necessary if the broker is to perform his function of securing a buyer under his listing contract. The agreement of 1945 between the Wisconsin Bar Association and the Wisconsin Association of Real Estate Brokers is not to be taken as evidence that the practice of law is authorized or should be authorized. That agreement is evidence only that the brokers and the lawyers were then concerned about the problem which had become acute and which they unsuccessfully attempted to solve by such agreement.

The basic reason why this court should prohibit the practice of law by laymen and strike down the rule of the Real Estate Brokers' Board is not to aid the legal profession but to safeguard the public from the disastrous results which have and are bound to flow from the activities of individuals who practice a learned profession which entails years of preparation and who are not bound by the high standards of professional conduct which are imposed on the members of the bar. For discussion of cases involving the problem, see Skiba, The Completion of Deed Forms by Real Estate Brokers, 44 Marquette Law Review (1961), 519.

If brokers may practice law "a little bit," there is nothing to stop them from advertising that fact and advising clients they need not hire a lawyer. Instances of this have happened in the past. In spite of the fact that Rule, sec. REB 5.04, provides a broker, acting as such, may use standardized forms of deeds, land contracts, leases, options, mortgages, assignments of mortgages and land contracts, releases of mortgages,

chattel mortgages, bills of sale, conditional sales contracts, and other instruments of a similar nature, a broker may not assure the people, who rely on him to correctly prepare or use the proper form. The Rule prohibits giving "advice or opinions as to the legal rights of the parties as to the legal effect of instruments to accomplish specific purposes. . . ." Thus a broker may practice law but cannot tell the persons involved the legal effect of what he is doing or whether the legal form which he selects will accomplish a specific purpose. This is unrealistic. When the broker handles the details of a real-estate closing and prepares the legal documents, the interested parties either inquire of the broker concerning their rights or assume the documents will accomplish their specific purposes. The majority opinion sanctions such assumption and encourages it. Not all brokers in the past have carried on the practice to the extent now permitted, and probably will not in the future. It would seem to me that a broker should be hesitant to undertake the responsibility and possible liability for the practice of the law which this rule permits him to undertake.

I would sustain the demurrer and enter a declaratory judgment to the effect Rule, sec. REB 5.04, is invalid.

I am authorized to state Mr. Justice CURRIE and Mr. Justice DIETERICH join in this dissent.