101 N.J. Super. 156 (1968)
243 A.2d 828
LAWRENCE H. ROSENTHAL, INDIVIDUALLY AND t/a INDUSTRIAL REALTY AND FEIST & FEIST, A NEW JERSEY CORPORATION, PLAINTIFFS-APPELLANTS,
v.
ART METAL, INC., ETC., AND GENERAL DYNAMICS CORPORATION, ETC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1968.
Decided May 28, 1968.
*157 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Philip L. Chapman argued the cause for Feist & Feist (Messrs. Hellring, Lindeman & Landau, attorneys).
Mr. Joel Sondak argued the cause for Lawrence H. Rosenthal (Messrs. Waldor & Hochberg, attorneys).
Mr. Richard R. Hellstern argued the cause for Art Metal, Inc. (Messrs. Lowenstein & Spicer, attorneys).
Mr. William L. Dill argued the cause for General Dynamics Corporation (Messrs. Stryker, Tams & Dill, attorneys).
PER CURIAM.
In accordance with his opinion reported in 95 N.J. Super. 8 (Law Div. 1967) Judge Owens entered judgment in favor of defendants, and plaintiffs appeal. We affirm.
The facts are stated in that opinion and need not be repeated in full. Suffice it to say that (giving plaintiffs the benefit of all evidence favorable to them) plaintiff Rosenthal *158 had been employed as a real estate salesman by Feist & Feist (hereafter Feist); in February 1963 he left their employ and, as required by N.J.S.A. 45:15-14, his salesman's license was surrendered; on April 16, he took the broker's examination; on April 18 he inquired by telephone and was told he had passed the examination; on April 22, before he received the license, he telephoned General Dynamics, whose plant had been destroyed by fire, and told its Mr. Yachmetz that the Art Metal plant was for sale and might be suitable for General Dynamics; the Art Metal plant was listed exclusively with Feist and five other brokers; on April 22, after talking to Yachmetz, Rosenthal entered into an agreement with Feist to split the commission if General Dynamics bought the property; on April 23 Rosenthal mailed a plot plan and other information relating to the property to General Dynamics; Rosenthal never told General Dynamics that the property was listed with Feist or of Feist's interest in the deal, but on April 23 he wrote Art Metal of his arrangement with Feist; Art Metal never replied; Feist never communicated with Art Metal or General Dynamics about the deal prior to the sale; on April 25 Rosenthal received his broker's license; Rosenthal heard nothing from Art Metal or General Dynamics until May 12, when Yachmetz called him and asked whether he had any other property to offer, and Rosenthal suggested property in Elizabeth; Rosenthal did nothing other than above set forth to promote the sale, and Feist did nothing at all; on or about May 25 General Dynamics contracted to buy the property and thereafter closed title. Incidentally, all of Rosenthal's letters were on letterheads of "Industrial Realty."
N.J.S.A. 45:15-10, which deals with the examination for a broker's license provides, in pertinent part, that:
"Upon satisfactorily passing such examination a license shall be granted by the commission to the successful applicant therefor as a real estate broker * * *, and the applicant upon receiving the license is authorized to conduct in this state the business of a real estate broker * * *." (Emphasis added)
*159 Thus, the statute makes it clear that until receipt of the license an individual is not authorized to act as a broker. Acting as a broker without a license is punishable by a fine. N.J.S.A. 45:15-23. And there is no distinction between an individual who was previously licensed as a salesman and one who was not.
In essence, Judge Owens held that Rosenthal was not entitled to collect a commission from Art Metal in his own right because he had no contract with it and was not licensed when he rendered the service for which he sought compensation; and Feist could not in its own right because it had done nothing to earn it. He held further that neither Rosenthal nor Feist was entitled to benefit from the co-brokerage agreement on the theory that each was the agent for the other because, when the joint enterprise was entered into and when Rosenthal acted pursuant thereto, Rosenthal was not a licensed broker. Therefore, Judge Owens concluded, neither plaintiff was entitled to recover in contract for commissions or in tort for malicious interference with his or their present contract or his or their present or prospective economic advantage. We agree. Therefore, it is not necessary for us to pass upon defendants' argument that the sale was brought about through the efforts of others, and that, even if Rosenthal had a license, plaintiffs did not do enough to entitle them to a commission.
Plaintiffs' appeal is predicated chiefly upon the proposition that N.J.S.A. 45:15-3 requires only that a plaintiff be licensed when his cause of action arose.
N.J.S.A. 45:15-3 provides:
"No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose." (Emphasis added)
Plaintiffs contend that their cause of action arose on May 25, 1963, when the contract for the purchase of the *160 Art Metal property was signed by General Dynamics; at that time Rosenthal already had his broker's license; hence, they complied with N.J.S.A. 45:15-3 and are entitled to recover. The correctness of that argument is the key question in this case.
As Judge Owens pointed out, no New Jersey case has expressly passed upon this question, but see Tanenbaum v. Sylvan Builders, Inc., 29 N.J. 63 (1959) and Yoerg v. Northern New Jersey Mtg. Associates, 44 N.J. Super. 286 (App. Div. 1957). Elsewhere in the country there is a split of authority upon the question. Plaintiffs cite, as supporting their view, Pound v. Brown, 258 Iowa 994, 140 N.W.2d 183 (1966); Schreibman v. L.I. Combs & Sons, Inc., 337 F.2d 410 (7th Cir. 1964), certiorari denied, 380 U.S. 911, 85 S.Ct. 896, 13 L.Ed.2d 797 (1965); Pierce v. Isabel, 70 Ohio App. 385, 40 N.E.2d 481 (Ct. App. 1941). Defendants cite in opposition Bendell v. De Dominicis, 251 N.Y. 305, 167 N.E. 452 (1929). See also Calhoun v. Banner, 254 N.Y. 325, 172 N.E. 523 (1930); Kemmerer v. Roscher, 9 Wis.2d 60, 100 N.W.2d 314 (1960). Cf. Galbreath-Ruffin Corp. v. 40th & 3rd Corp., 19 N.Y.2d 354, 280 N.Y.S.2d 126, 227 N.E.2d 30 (1967).
We adopt the views expressed by the New York Court of Appeals in Bendell because we think they express the policy which underlies our statute.
The New York statute considered in Bendell was almost identical with N.J.S.A. 45:15-3. Some time prior to September 1926, defendant asked Bendell to sell her property. At that time Bendell was a licensed broker. However, from September 1926 to November 7, 1927 Bendell had no license. During the period when Bendell was unlicensed, he produced one Lazarus as a prospective purchaser, but the parties could not agree on a price. Thereafter, and without the further intervention of Bendell, defendant and Lazarus, on November 15, 1927, signed a contract of sale. On that date Bendell again had his broker's license. The Court of Appeals held that nevertheless Bendell could not recover. In *161 a unanimous opinion by Judge Pound, joined in by Chief Justice Cardozo and Justices Lehman, Kellogg, O'Brien and Hubbs, it reversed the judgment in Bendell's favor, saying:
"The courts below have proceeded on the theory that the meeting of minds of vendor and purchaser on the terms of sale occurred on the date of the signing of the contract of purchase and sale; that the plaintiff was then a licensed real estate broker, and as that was `the date when the alleged cause of action [for commissions] arose,' he maintained the burden of proof that he was a licensed real estate broker when such cause of action arose, within the provisions of section 442  d, and is entitled to recover. Plaintiff has, however, failed to show that he was a licensed real estate broker at the time he rendered the services alleged in the complaint and proved on the trial. If he, while unlicensed, engaged in a single act prohibited by the article, he was guilty of a misdemeanor. His contention is that he is nevertheless subject only to the penalties imposed by law, and that his right to recover his commission is not affected by the statute. He relies on the principle enunciated as follows: `It is true that, where the statute prohibits the doing of a particular thing, the courts will not aid in enforcing contracts made in violation of the law; but where a contract, not unlawful in itself, has been executed, and the parties have enjoyed the benefits of the contract, the mere fact that one of the parties has violated a penal statute in the approach to the contract will not prevent a court from enforcing payment.' * * *.
But the doing of the particular thing, the rendering of services by plaintiff under his contract of employment as a real estate broker, when unlicensed, was in itself illegal. One purpose of the statute was to mark off `the business of the broker as distinct from occupations which by general acquiescence are pursued of common right without regulation or restriction,' and to make illegal the acts of the unlicensed in the real estate broker's field. Roman v. Lobe, 243 N.Y. 51, 152 N.E. 461, 463, 50 A.L.R. 1329. Plaintiff in this case, having been left out of the picture from the time he made the offer of Lazarus to the time of the execution of the contract of sale, could not establish his case upon his contract of employment without proving the criminal nature of his services in obtaining Lazarus as a prospective purchaser for the real estate in question * * *. He seeks to avoid the effect of the illegal character of his services when rendered because, after his services ceased, the parties came together on terms first presented to the defendant by him. He comes not within the letter or the spirit of the statute. Parties are not allowed to cheat their licensed brokers by discharging them after a sale has been effected through their agency and at the same time gathering the fruits of their *162 labor (Sibbald v. Bethlehem Iron Co., 83 N.Y. 378, 382, 38 Am. Rep. 441), but this case is quite different. Out of services illegally rendered comes a lawful contract of sale. The question is whether, assuming for the purpose of the argument that plaintiff was the producing cause of the agreement although he was absent when it was actually concluded, his claim for compensation is outlawed by the criminal nature of such services. The answer seems conclusively in the affirmative. Illegality is a defense to the action independently of the burden of allegation and proof contained in section 442  d. Otherwise an unlicensed broker might negotiate sales with impunity up to the point of a complete agreement and then obtain his license for the purpose of recovering his commissions on the execution of a formal contract. The law is not so toothless." (167 N.E. 453-454)
New York has adhered to that position in later cases. Calhoun v. Banner, supra. In Calhoun a broker, who had no license when he was hired, was permitted to recover only because the acts upon which he predicated his claim were all performed after he had his license. After quoting from Bendell, Judge Lehman said (172 N.E. p. 524):
"Until the license was obtained any services he might render would be illegal; but for such illegal services, if any, the plaintiff claims no compensation. All the negotiations, all the services rendered through which the plaintiff induced his customer to accept the defendants' offer, came after the date of the license. No illegal act by the plaintiff was a producing cause of the results achieved by the plaintiff for which he claims compensation, or taints with its own illegality the plaintiff's cause of action."
In the case at bar, neither Rosenthal nor Feist did anything to accomplish the sale after Rosenthal received his license  every act upon which they predicate their claim was done by Rosenthal without a license, was illegal and was punishable under the Penalty Enforcement Law. N.J.S. 2A:58.1 et seq.; N.J.S.A. 45:15-23.
Even if Rosenthal had not actually surrendered his salesman's license, it would have made no difference, for he would not have been entitled to operate under it after he left the employ of Feist. Cf. Brener & Lewis, Inc. v. Fawcett Publications, 197 Misc. 207, 90 N.Y.S.2d 853 *163 (Sup. Ct. 1949), affirmed 276 A.D. 994, 95 N.Y.S.2d 598 (App. Div. 1950).
The judgment is affirmed.