David 0. Boehm, J.
This is an action to recover a deposit paid to defendant James A. O’Neil, real estate broker, in connection with the sale of premises at 313 Wilder Street, Rochester, New York, owned by Randolph Marttucci and Laure Marttucci.
*334 On April 21,1970 the plaintiffs signed a purchase offer to buy the Marttucci residence for $15,900, payable all cash at time of transfer. Their signatures were witnessed by defendant Lois V. Harris, a saleswoman working for O’Neil.
The purchase offer form is a standard form printed and distributed through the Rochester Real Estate Board. On the upper left hand corner appears the seal of the National Association of Real Estate Boards, of which the Rochester Real Estate Board is a member. In addition to certain standard boiler plate paragraphs, the name of the defendant James A. O’Neil, Realtor, is printed in that part of the contract consisting of the offer as well as in the printed acceptance.
There are blank spaces for the insertion of the property location, the purchase price, terms, the final acceptance date, the closing date and the amount of money deposited by the purchaser at the time of executing the offer. The court takes judicial notice (4 Bender’s New York Evidence, § 170) of the practice in Monroe 'County for the salesman or broker to complete the terms of the offer which, from a casual comparison of the signature of defendant Harris with the written terms, appears to have been done in this case by her.
These written terms and conditions represent extremely important areas of the contract. In addition to the amount of the purchase price of $15,900, the written terms also require that payment be made in cash at the time of transfer; that the contract is subject to the purchasers’ obtaining an FHA mortgage loan in the sum of $14,300 for a 25-year term; that the application for such mortgage must be accepted for processing by a lending institution within 15 days or the seller may cancel on written notice to the purchasers. It is further subject to the approval of plaintiff, Lois T. Wyckoff, the wife of plaintiff Claude E. Wyckoff, following her inspection of the premises on April 22, 1970, and the affixing of her signature to the offer, which was done.
Probably the most important condition, at least with respect to this lawsuit, is the one making the contract subject to the sellers’ “ obtaining the property at 151 Lake Front, Irondequoit, N. Y. ” The contract does not specify whether ‘ ‘ obtaining ’ ’ means obtaining title, possession, or simply a binding contract of transfer.
The offer was made good until April 23, 1970 and called for closing on or before June 1, 1970. According to the contract, and the complaint, the sum of $954 was deposited with the defendant O’Neil by the purchasers, “ to be held until this offer is accepted, at which time it shall become part of the purchase *335 price or returned, if not accepted.” Judicial notice is taken that in 'Monroe County the prevailing minimum brokerage commission for dwellings is 6% of the purchase price (Cash v. Diamond, 208 Misc. 712), and $954 is 6% of the purchase price here. The printed portion of the offer also includes language, immediately following the above printed terms, 1 ‘ I agree to pay the prevailing minimum brokerage commission if I fail to complete my part of this agreement.”
The sellers executed their acceptance on the same date. Their signatures were also witnessed by defendant Harris. There being no additions or changes to the offer, their acceptance consisted of the following printed language on the contract: ‘ ‘ I hereby accept the above offer and agree to sell on the terms and conditions set forth and to pay James A. O’Neil, Realtor, prevailing minimum brokerage commission, and the deposit here made may be applied thereon.”
The plaintiffs’ suit to recover the deposit is based upon the nonfulfillment of the written terms in the contract because the FHA loan was never procured and the sellers never obtained possession of the 151 Lake Front premises. Plaintiffs further allege that the time for the completion of these contingencies and the transfer of title has expired and that the defendants refused to return the deposit upon demand.
The motion by defendant O’Neil is brought pursuant to CPLR 3211 (suhd. [a], par. 7) for judgment dismissing the complaint upon the ground that it fails to state a cause of action. The defendants both allege that they were acting solely as agents for disclosed principals and that, consequently, they have no obligation to the plaintiffs whose remedy, if any, would he solely against the sellers. Defendant Harris, moving for summary judgment pursuant to CPLR 3212, relies upon several undisputed facts, i.e., the deposit was delivered into the control of codefendant O’Neil; that the check for the deposit was made payable to O’Neil; that Harris was solely an agent of O’Neil who, as to her, was her principal; that she does not have the deposit in her possession or control. It appears that she has also brought a cross claim against O’Neil.
There is a general rule in the law of agency which supports the defendants’ position. It is that where a party with whom an agent is dealing knows that he is acting for a principal, either by disclosure by the agent or otherwise, he cannot he held personally liable upon a contract he negotiated on the principal’s behalf. Such insulation from liability includes the situation where a party to the contract becomes entitled to a return of money paid to the agent because of the failure of a contin *336 gency in the contract notwithstanding the agent still has possession of the money. (2 N. Y. Jur., Agency, § 301; Beeman v. May, 193 Misc. 684; Scaramuzzino v. Larkin, 54 Misc 2d 839.)
However, this is not the standard situation to which the general rule applies, at least not yet. It is necessary to probe further to determine what the effect of the real estate agent’s interest is in the contract; whose contract we are construing; and the role of the agent in drawing as well as negotiating the contract.
Although not raised in either the pleadings or moving papers, the court is empowered to take judicial notice of well-known facts (Stahl Soap Corp. v. City of New York, 7 Misc 2d 901, revd. on other grounds, 4 A D 2d 957, affd. 5 N Y 2d 200; City of Buffalo v. New York Cent. R. R. Co., 125 Misc. 801, affd. 218 App. Div. 810, affd. 271 N. Y. 658; Walsh v. Trustees of New York Brooklyn Bridge, 96 N. Y. 427), particularly as they involve a practice which, for many years, has involved the community at large and the Bar. I am referring, of course, to the notorious and tolerated practice of real estate brokers’ drawing contracts for the purchase and sale of real estate. Although not directly in point, there is strong authority for the court to review and investigate, on its own motion, matters affecting the practice of law. (Matter of Association of Bar of City of New York, 222 App. Div. 580; Matter of Anonymous v. Arkwright, 5 A D 2d 790.)
The printed form contract is a product of the Rochester Real Estate Board. The terminology in the contract is the standard language used in the great majority of the contracts printed and distributed by it, with no changes except for those specifically requested by individual members of the board. The seal of the National Association appears on all of the Rochester Real Estate Board’s contracts. As an added service, it prints the business name of the realtor who purchases the contract. The fixed commissions are printed on the contract.
Regardless of whether or not some lawyer at some time in the past may have advised the Rochester Real Estate Board regarding the terminology or legal effect of the language appearing in the printed portion of its contract, there is no question but that it is exclusively the end product of a lay organization not authorized to practice law.
The requirements to become a real estate broker are governed by the licensing requirements of article 12-A of the Real Property 'Law (Real Property Law, §§ 440-a, 441). The Bar and the practice of law have been historically under the exclusive *337 supervision and jurisdiction of the courts.[1] (For comprehensive treatment of the subject, see Payne, Title Insurance, the Legislatures and the Constitution, 21 Ala. L. Rev. 25 [1968] ; Payne, Title Insurance and the Unauthorized Practice of Law Controversy, 53 Minn. L. Rev. 423 [1969].) Admission to practice is regulated by statute, and anyone not licensed to practice law may be enjoined from doing so. In addition, a violation constitutes a misdemeanor. (Judiciary Law, art. 15, §§ 476-a, 476-b, 478, 485.)
Whether as exceptions to the rule or as erosions from the generally accepted definition of legal practice, or otherwise, the courts in various jurisdictions have carved out certain areas of sanctioned conduct by a lay person. They have been delineated as follows:
(1) The Substantial Interest Theory.
Performance of services that would ordinarily be regarded as practicing law justified when done by someone with sufficient interest in the subject matter to be viewed as a party acting for himself.
(2) , The Incidental Theory.
A service usually performed by a lawyer not unauthorized as done ancillary to a business or profession.
(3) The Compensation Theory.
This actually is a limitation upon the incidental theory. Compensation for services performed as an incident to a business regularly carried on renders them the practice of law.
(4) The Complexity Theory.
This also is a limitation upon the incidental theory. Performance of services ordinarily regarded as legal, may not involve the handling of difficult or complex questions of law.
(See Unauthorized Practice Source Book, American Bar Foundation [rev. ed.; 1965], pp. 70-83; see, also, Pelletier, Unauthorized Practice of Law by Real Estate Brokers and Title Insurance Companies, 36 Notre Dame Law. 374 [May, 1961].)
The opinion issued February 1, 1936 by the Committee on Unauthorized Practice of Law of the American Bar Association *338 (Informative Opinions, p. 1 [July 31, I960]), ‘1 authorizes ” one not licensed to practice law to fill in the blanks of a legal instrument which “ within a reasonable time of its use ” had been selected or presented by one licensed to practice law, who must also instruct the user of the instrument fully regarding the essential details required for the creation of a legally binding contract. It was the committee’s further opinion that it was not in the public interest for one not licensed to practice law to select or to adopt or to adapt or to draft or otherwise prepare a legal instrument, particularly when the person selecting or adapting it has an interest adverse to or in conflict with that of the parties to the transaction, or either of them. Since a real estate dealer, broker or representative depends for his compensation upon the successful conclusion of the transaction, it was the committee’s opinion that the “ interests of one whose compensation so depends are necessarily and inevitably opposed to those of the parties ”, particularly where he selects, adapts, etc., the legal instrument used to consummate and evidence the deal.
The Rochester Real Estate Board has for many years printed and distributed and its members have used the form of purchase offer which was used in this case. For about three years the Monroe County Bar Association has prepared and printed a more acceptable contract for the purchase and sale of real property which offers many more protections to both the buyer and the seller. Printed on the top of the first page, in bold face capital letters, the following caution appears: “ WHEN SIGNED, THIS DOCUMENT CREATES A BINDING CONTRACT. BUYER AND SELLER ARE CAUTIONED TO CONSULT THEIR OWN ATTORNEYS BEFORE SIGNING.”
Similar language is found in the model form agreed upon in 1964 and distributed to local Bar Associations and realtors by the National Conference of Lawyers and Realtors about 1967 (30 Unauthorized Practice News 262 [Fall, 1964]; 34 Unauthorized Practice News 56 [Fall/Winter, 1968-1969]).
Similar language is not found in the Rochester Real Estate Board contract.
It is well known that a committee of the Monroe County Bar Association has met with representatives of the Rochester Real Estate Board on a number of occasions in the past few years for the express purpose of encouraging the wider use of the Monroe County Bar Association form. That form has been made available equally to lawyers and brokers alike for several years, surely within a much more reasonable time than the form *339 which the real estate brokers locally, for reasons of their own, have consistently preferred to use.[2]
The case law varies with respect to the propriety of a lay person’s filling in simple, standardized forms.
(Compare: People v. Title Guar. & Trust Co., 227 N. Y. 366; L. Meisel & Co. v. National Jewelers Bd. of Trade, 90 Misc. 19, affd. 173 App. Div. 889; Hospital Credit Exch. v. Shapiro, 186 Misc. 658; Creekmore v. Izard, 236 Ark. 558; People ex rel. Illinois State Bar Assn. v. Shafer, 404 Ill. 45; Hulse v. Criger, 363 Mo. 26; Arkansas Bar Assn. v. Block, 230 Ark. 430; Keyes Co. v. Dade County Bar Assn., 46 So. 2d 605 [Fla.] ; State Bar of Michigan v. Kupris, 366 Mich. 688; State ex rel. Indiana State Bar Assn. v. Indiana Real Estate Assn., 244 Ind. 214; State ex rel. Reynolds v. Dinger, 14 Wis. 2d 193; Conway-Bogue Realty Investment Co. v. Denver Bar Assn., 135 Col. 398; Martineau v. Gresser, 19 Ohio Opns. 2d 374, 182 N. E. 2d 48; news story regarding New Jersey v. Bander, (Monmouth County Ct.), N.Y.L.J., July 16, 1969, p. 1, col. 1; Washington State Bar Assn. v. Washington Assn. of Realtors, 41 Wn. 2d 697.)
However, there are strong limitations upon the extent of the services to be performed even in those jurisdictions authorizing the preparation of simple legal documents.
For example, in Martineau v. Gresser (19 Ohio Opns. 2d 374, 182 N. E. 2d 48, supra) it was held that a real estate broker saleswoman went beyond what a broker can insert in a contract for the sale of realty when she included conditions requiring the vendors to seed and grade the lawn, repair the front steps, clean the windows, and that the purchase price was to be financed with $2,000 as a down payment.
The purpose of this discussion is to demonstrate that we are dealing here with something more than just an ordinary principal-agency relationship. In addition to a real estate broker’s being an independent contractor available to serve either a buyer or seller, which alone would not affect the usual rule enunciated earlier, we are also obliged to recognize that his interest in the contract he draws raises not only the question of the unauthorized practice of law but also whether his interest *340 transforms the broker’s status from that of an agent to that of one with such a “ substantial interest ” that he becomes a principal to the contract.
Indeed, it has been on this basis that the silently tolerated practice of brokers’ drafting contracts selected and distributed by their own organization has been arguably justified, i.e., since they have an interest in their commission, they have the right to draw the contract which provides for and protects it. (See Ingham County Bar Assn. v. Walter Neller Co., 342 Mich. 214; Hulse v. Criger, 363 Mo. 26, supra; State Bar of Michigan v. Kupris, 366 Mich. 688, supra; State ex rel. Indiana State Bar Assn. v. Indiana Real Estate Assn., 244 Ind. 214, supra.)
For example, in Hulse v. Criger (supra) the court pointed out that the broker has a clear interest in the transaction until it is closed for it is only then that he actually receives his commission.
However, one may not justify a practice on the basis of being a principal and then argue freedom from a particular obligation under the same contract because one is only an agent. Despite Mr. Bumble, the law is not all that of an ass. It is a sword that cuts both ways. It may not be manipulated to serve as a weapon for one purpose and a shield for another.
At the very least, questions of fact are raised as to the status of the defendants O’Neil and Harris in the selection of the contract form, in drafting its most important terms and in obtaining its execution.
If it appears that the defendants were engaged in the practice of law, it may be that they would be barred from any claim to commission. Although referring to an action for commission by an unlicensed broker, the following language of the Court of Appeals would be pertinent to an action (and, as likely, a defense) involving commissions due under a contract drawn by a party to the action in violation of law. “Out of services illegally rendered comes a lawful contract of sale. The question is whether, assuming for the purpose of the argument that plaintiff was the producing cause of the agreement * * * his claim for commission is outlawed by the criminal nature of such services. The answer seems conclusively in the affirmative.” (Bendell v. De Dominicis, 251 N. Y. 305, 311 [emphasis supplied].)
However, if it appears that their conduct was justified by their own interest in the contract, then the defendants may not seek immunity as agents from this suit seeking recovery of the deposit.
On the other hand, it may be that the conditions as to obtaining the FHA mortgage loan and obtaining the property at 151 *341 Lake Front in Irondequoit would defeat entirely any claim to commissions.
Did the defendants produce a buyer “ able ” to buy? “ Commissions ordinarily become due when the broker produces to his principal a party ready, willing and able to purchase on the terms of sale authorized or accepted by such principal.” (Bendell v. De Dominicis, supra, p. 311.) The plaintiffs’ financial ability obviously depended upon the availability of FHA financing of $14,300 for a 25-year term. Until the purchasers had a commitment for this amount, they would not be “ able ” to perform as required by the contract. There is no presumption favoring the real estate broker that commissions become due when the contract is executed. The burden of proof as to this is on him. (Bendell v. De Dominicis, supra, p. 311; Mantovani & Lynch, Inc. v. De Bartolo, 152 N. Y. S. 2d 560.) At the very least, there is a question of fact for a jury. (Epstein v. Bossard, 206 Misc. 48.)
Furthermore, the purchasers would not be liable for commission unless, as the contract states, they failed to complete their part of the agreement or unless they, rather than the sellers, employed defendant O’Neil. Ordinarily the broker is limited to seeking his commission from the party who employs him. (Donato v. Baltrusaitis, 56 Misc 2d 935, 941.)
Since the associated question of who is liable to the defendants for their commission, if earned, will no doubt be an important one in determining the ultimate obligations here, the sellers, Mr. and Mrs. Marttucci, should be brought in as necessary parties. As already noted, the contract provides that the purchasers are responsible for the commission only if they fail to complete their part of the agreement. The contract also provides that the sellers agree to pay the commission. Consequently, liability for commission, represented by the deposit the plaintiffs are suing for, is an essential question which can be resolved best by adding the Marttuccis as party defendants so that all of the issues can be decided in this lawsuit.
Motions denied.

. Although an early Court of Appeals ease, Matter of Cooper (22 N. Y. 67), recognized the Legislature, rather than the courts, as the final authority, there is recent commentary indicating the development of judicial supremacy. (Murphy, Control of the Practice of Law in New York State — The Courts or the Legislature30 Unauthorized Practice News 319 [Winter 1964 — 1965].)

. Compare this practice with the American Bar Association-National Association of Real Estate Boards Statement of Principles of 1942, art. I, par. 2: “ However, when acting as broker, a Realtor may use an earnest money contract form for the protection of either party against unreasonable withdrawal from the transaction, provided that such earnest money contract form as well as any other standard legal forms used by the broker in transacting such business, shall first have been approved and promulgated for such use by the Bar Association and the Real Estate Board in the locality where the forms are to be used.” (3 Martindale-Hubbell Law Directory, 273A [1970].)