29 N.J. Super. 86 (1953)
101 A.2d 559
ALBERT M. MARAZITI, PLAINTIFF-RESPONDENT,
v.
JOHN J. CORIGLIANO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided December 21, 1953.
*87 Before Judges CLAPP, GOLDMANN and EWART.
Mr. Leonard Tolkoff argued the cause for appellant (Mr. Edward F. Broderick, attorney).
*88 Mr. Paul Colvin argued the cause for respondent.
The opinion of the court was delivered by GOLDMANN, J.A.D.
Plaintiff, a licensed real estate broker of New Jersey, instituted an action in the Morris County District Court for a $500 commission allegedly due him under an exclusive sales listing agreement dated August 26, 1950. The agreement gave plaintiff the exclusive right "for five weeks from the date hereof, and thereafter until I shall have given Albert M. Maraziti ten days notice of termination in writing," to sell or exchange certain property owned by defendant. Defendant further agreed to pay plaintiff a commission of $500 on such sale or exchange "in case it is sold by him, me, or anyone else during the period herein mentioned." Defendant, without terminating plaintiff's agency, sold the property on March 26, 1951. He refused to pay the agreed commission.
Defendant filed no answer to the complaint but entered a general appearance. At the trial in the district court he interposed two defenses: (1) since plaintiff treated the agreement as an exclusive agency rather than an exclusive right to sell, defendant, as owner, did not relinquish his right to sell the property himself; and (2) the agreement contained no definite termination date, as provided by N.J.S.A. 45:15-17(f), and hence plaintiff is not entitled to the commission because he violated the provisions of that statute. Plaintiff objected to the introduction of the defenses because they were not formally pleaded by way of answer. He testified, the agreement was introduced in evidence, and the case submitted on an agreed set of facts and briefs. The court entered judgment of $500 and costs in plaintiff's favor, and defendant appeals. The first of the two defenses raised in the court below is not raised on this appeal. It was without merit; the agreement gave plaintiff the right to a $500 commission whether the property was sold by him, defendant or any one else.
Defendant contends here that the contract was "illegal and void ab initio" because it violated N.J.S.A. 45:15-17(f) *89 and was in contravention of public policy. The cited section, along with one other, was added to R.S. 45:15-17 by way of amendment in 1948. L. 1948, c. 155, § 2. (This section was amended in other respects by L. 1953, c. 229.) N.J.S.A. 45:15-17(f) provides that the New Jersey Real Estate Commission may revoke a real estate broker's license for
"(f) Failure to provide his client with a fully executed copy of any sole or exclusive sales listing contract at the time of execution thereof, and failure to specify therein a definite terminal date which terminal date shall not be subject to any qualifying terms or conditions."
Defendant argues that the agreement did not contain a definite terminal date without qualifying terms and conditions; that the statute attaches a penalty in such case, and therefore the agreement is void notwithstanding that the statute does not expressly pronounce it so.
We deal initially with plaintiff's contention that this defense has no standing because defendant failed to specially plead illegality in the trial court. He relies on R.R. 4:8-3 (formerly Rule 3:8-3), which is incorporated in the district court practice by R.R. 7:5-5, relating to the form of answers in that court. The argument is clearly unsound. R.R. 7:5-4 permits a defendant to defend by entering his appearance or by filing an answer. The rules do not make the filing of the answer compulsory. Defendant here chose not to file an answer, but did enter an appearance, thus apprising plaintiff of his intention to defend the action. If plaintiff was at all concerned as to what the defense might be, he could readily have ascertained it by resorting to the comprehensive discovery proceedings permitted by the rules, particularly R.R. 4:16-1 et seq. relating to depositions or R.R. 4:23-1 et seq. relating to interrogatories  see R.R. 7:6-4 and 5, applicable to county district courts  or even to the pretrial procedure permitted by R.R. 7:6-3 which may be invoked by motion. He could thereby have forced defendant to disclose his position. He did not do so. *90 Eventually defendant stated his defense at the outset of the hearing. The defense of illegality was a strictly legal one. Plaintiff objected to it and then took the stand and testified. It was then agreed to submit the case to the court on an agreed set of facts and briefs. This afforded plaintiff an opportunity to meet the defense and overcome it if he could.
Our district court practice was designed so as to render speedy and substantial justice to the large number of litigants who resort to that court for the determination of their claims. The rules reflect this consideration, for after considerable deliberation answers have not been required.
The first question for determination is whether there was a definite terminal date without qualifying terms or conditions, within the purview of N.J.S.A. 45:15-17(f). Our statute is in many respects similar to the California act relating to the grounds for the suspension or revocation of real estate brokers' licenses, Deering, California Codes, Business and Professions, § 10176, whose legislative history antedates ours which was first enacted in 1921. N.J.S.A. 45:15-17(f), imported into our law by the amendment of 1948 (L. 1948, c. 155, § 2), is similar to section 10176(f) of the California statute enacted in 1945 (Cal. Stats. 1945, c. 660, § 4). We may therefore look to the California decisions as authority for holding the agreement here lacks a definite terminal date not subject to any qualifying terms or conditions.
In Dale v. Palmer, 106 Cal. App.2d 663, 235 P.2d 650 (D. Ct. App. 1951), the court dealt with a real estate broker's agreement which listed for sale houses then being built by defendant, the listing to start automatically when construction began and to continue exclusively and irrevocably until 30 days after notice of completion was filed. Section 10176(f) of the Business and Professions Code empowered the Real Estate Commissioner to suspend or revoke a real estate license where the licensee was guilty of the practice of claiming, demanding or receiving a commission under any exclusive agreement authorizing or employing him to sell, buy or exchange real estate, where the *91 agreement did not contain "a definite, specified date of final and complete termination." The broker was held not entitled to damages because the agreement failed to contain the required specified date of termination.
The California court referred to Castleman v. Scudder, 81 Cal. App.2d 737, 185 P.2d 35 (D. Ct. App. 1947), which involved section 10301(f) of the Business and Professions Code of California authorizing the Real Estate Commissioner to suspend or revoke the license of a business opportunity broker where the exclusive listing agreement did not contain "a definite specified date of final and complete termination"  a provision like that relating to real estate brokers. The agreement there involved provided that the agency was to continue "30 days from date hereof and thereafter until three days have elapsed after receipt of written notice from the Owner, terminating this agency, * * *." The court held that the agreement did not comply with the mandate of the statute.
"* * * The statute does not refer to a method of computation of the termination date upon the happening of some future event, but rather to the failure to set forth a definite specified date of final and complete termination. * * * By its particular wording section 10301(f) can be construed only to denote a definite date of termination specifically set forth in a contract at the time of its execution by the owner. An interpretation such as is contended for by petitioners [brokers] if adopted would only perpetuate the very indefinite feature which the legislature has said is contrary to the general public welfare." (81 Cal. App.2d, at page 741; 185 P.2d, at page 37).
The Castleman case was discussed and approved, although distinguished on the facts, in Lowe v. Loyd, 93 Cal. App.2d 684, 209 P.2d 851 (D. Ct. App. 1949), involving a real estate broker's agreement under section 10176 of the Business and Professions Code; and it was approved and followed in Dale v. Palmer, above. The logic of these California cases is inescapable. Although the agreement here contained a definite terminal date of five weeks, this was qualified in that the agency was to continue thereafter until the defendant gave ten days' notice of termination. We *92 conclude that the agreement violates N.J.S.A. 45:15-17(f) because of this indefinite feature.
Plaintiff cites Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950), for the proposition that since the Supreme Court did not discuss our problem, it must be held to have tacitly considered that the clause "limited in time to three months from the time the said tenant goes out of possession or is put out of possession," contained in the real estate brokerage contract there under consideration, was not a violation of N.J.S.A. 45:15-17(f). The brokerage agreement was executed in 1946, prior to the passage of the 1948 amendment to R.S. 45:15-17, and plaintiff cannot therefore gain any support in the decision.
The next question is whether the agreement is illegal and unenforceable because it violates the provisions of the statute. We find no New Jersey cases directly in point. Defendant cites Dale v. Palmer, 106 Cal. App.2d 663, 235 P.2d 650 (D. Ct. App. 1951), as on all fours with the case at hand. The court there held that section 10176 of the Business and Professions Code was highly penal in nature and that the contract under consideration, being founded upon an illegal act, was void ab initio. That case, as well as many other cases which might be cited, dealing with the subject of contracts contravening the policy of a public statute, would ordinarily lead us to the conclusion that the agreement here involved is unenforceable. See, for example, Sharp v. Teese, 9 N.J.L. 352 (Sup. Ct. 1828); Brooks v. Cooper, 50 N.J. Eq. 761 (E. & A. 1893); Lehigh Valley R.R. Co. v. United Lead Co., 102 N.J.L. 545 (Sup. Ct. 1926); Gionti v. Crown Motor Freight Co., 128 N.J.L. 407 (E. & A. 1942); Stack v. P.G. Garage, Inc., 7 N.J. 118 (1951); 5 Williston on Contracts (rev. ed. 1937), § 1630, pp. 4560 et seq. and vol. 6, § 1763, pp. 5003 et seq.; 2 Restatement of the Law of Contracts, § 580, pp. 1087 et seq., and New Jersey Annotations to the Restatement of the Law of Contracts, pp. 337 et seq.
However, N.J.S.A. 45:15-17 contains a provision not found in the California act. The source of that provision *93 is the original law of 1921, L. 1921, c. 141, § 13, and it reads:
"This act shall not be construed to relieve any person from civil liability or criminal prosecution under the laws of this State."
This language is not as apt as it might be, but it is quite clear. "Any person" is not limited to a real estate broker or a real estate salesman. The same words have since 1921 appeared in the very first sentence of N.J.S.A. 45:15-17, where it is provided that the Real Estate Commission may upon its own motion, and shall upon the verified complaint in writing of "any person," investigate the actions of any real estate broker or salesman. "Any person" includes the seller or buyer of real estate.
The Legislature, by virtue of the quoted language of the statute, indicated that although the Real Estate Commission might under N.J.S.A. 45:15-17(f) revoke a real estate broker's license because he entered into a contract such as is here under consideration, the contract itself remains enforceable in a civil action.
We therefore hold that plaintiff can recover the commission due him under the contract. The judgment will be affirmed.