95 N.J. Super. 8 (1967)
229 A.2d 676
LAWRENCE H. ROSENTHAL, INDIVIDUALLY AND T/A INDUSTRIAL REALTY, AND FEIST & FEIST, A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
ART METAL, INC., A NEW YORK CORPORATION AUTHORIZED TO DO BUSINESS IN NEW JERSEY, AND GENERAL DYNAMICS CORPORATION, A DELAWARE CORPORATION, AUTHORIZED TO DO BUSINESS IN NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 21, 1967.
*11 Mr. Milton Waldor for plaintiff Lawrence H. Rosenthal (Messrs. Waldor and Hochberg, attorneys; Mr. David Schechner on the brief).
Mr. Philip L. Chapman for plaintiff Feist & Feist (Messrs. Hellring, Lindeman & Landau, attorneys).
Mr. William L. Dill, Jr. for defendant General Dynamics Corporation (Messrs. Stryker, Tams & Dill, attorneys; Mr. William S. Tucker, Jr. on the brief).
OWENS, J.S.C.
Plaintiffs' action for real estate broker's commission was tried to a jury and at the close of all the evidence defendant General Dynamics Corporation (General Dynamics) moved for judgment. The motion was denied and the case submitted to the jury. The trial resulted in a mistrial due to the inability of the jury to reach a verdict. Defendant brings this motion pursuant to R.R. 4:51-2.
*12 The relevant facts as presented at trial are that on the morning of April 22, 1963 plaintiff Rosenthal telephoned defendant General Dynamics informing it of the availability of the Art Metal plant in Woodbridge, New Jersey. Rosenthal was not solicited by General Dynamics but called because of his knowledge that a fire had destroyed the General Dynamics plant and that Feist & Feist, a licensed real estate broker and his former employer, was one of the six brokers chosen by Art Metal to procure a purchaser for its Woodbridge property.
Rosenthal spoke with Mr. Kahn of Feist & Feist the same morning, requesting the plans and further information about the Art Metal property. After informing Kahn of the prospective purchaser he was given a plot plan and a listing sheet. At this time Feist & Feist agreed with Rosenthal to co-broker the property  that is, if Rosenthal effectuated the sale of the Art Metal property, Feist & Feist would divide its commission with him. Rosenthal forwarded the plot plan and other information to General Dynamics the same day.
These were the only acts done by him in regard to the sale of the property. At no time did Feist & Feist take any steps to procure General Dynamics as a purchaser of the Art Metal property. Sometime later Art Metal sold its Woodbridge plant to General Dynamics, no commission being paid to Rosenthal or Feist & Feist.
Rosenthal had terminated his employment with Feist & Feist sometime in the middle of February 1963, and on April 22 and 23 was not employed by a licensed real estate broker. Therefore, by reason of N.J.S.A. 45:15-14 and 45:15-1, he would not be entitled to a commission unless he was a licensed real estate broker. See Cohen v. Scola, 13 N.J. Super. 472, 476 (App. Div. 1951); Kenny v. Paterson Milk & Cream Co., 110 N.J.L. 141 (E. & A. 1933); Solomon v. Goldberg, 11 N.J. Super. 69, 72 (App. Div. 1950).
*13 At the time Rosenthal made the telephone call and mailed the letter, he was not a licensed real estate broker. He had taken the New Jersey Real Estate Brokers examination on April 16, 1963. He had called the Real Estate Commission and been informed that he had passed the examination prior to making the call to General Dynamics. However, he did not receive his license until April 25, 1963. See N.J.S.A. 45:15-10.
Plaintiffs nonetheless contend this does not bar their recovery, citing as authority N.J.S.A. 45:15-3, which states:
"No person, firm, partnership, association or corporation shall bring or maintain any action in the courts of this State for the collection of compensation for the performance of any of the acts mentioned in this article without alleging and proving that he was a duly licensed real estate broker at the time the alleged cause of action arose."
To substantiate their claim plaintiffs cite Pound v. Brown, 140 N.W.2d 183 (Iowa Sup. Ct. 1966). In opposition, defendant relies on Bendell v. De Dominicis, 251 N.Y. 305; 167 N.E. 452 (Ct. App. 1929). Both cases interpret statutory sections almost identical to New Jersey's N.J.S.A. 45:15-3, but arrive at opposite conclusions.
Both Bendell and Pound involve situations where a defendant seller contracted directly with the "broker" for the sale of the property. In the present case Rosenthal and Feist & Feist claim to be co-brokers; the real issue is the validity of the co-brokerage agreement. Therefore, neither Bendell nor Pound is on point.
A real estate broker is the agent of either the buyer or seller, whoever hires him first, for the sole purpose of obtaining a seller or buyer for a property. Corson v. Keane, 4 N.J. 221 (1950). Feist & Feist was the broker, or agent, of Art Metal. Thus, the co-brokerage agreement between Feist & Feist and Rosenthal is subject to and governed by the law of agency, as well as the law of contracts.
*14 It is a general rule that in all cases of delegated authority where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the powers are subject to his judgment or discretion, such authority cannot be delegated unless there is a special power of substitution. Brokers are included in this area of trust and confidence. 3 Am. Jur. (2d), Agency, § 150 (1962). However,
"If it is the known and established usage of the business to which an agency pertains that an agent may appoint subagents, the principal, in appointing the agent, is presumed to have acted with reference to the usage, and a power in the agent to delegate his authority in the customary way is implied." 3 Am. Jur. (2d) Agency, § 151 (1962). See 2 C.J.S., Agency, § 136 (1936).
In the real estate trade it is a common custom to co-broker properties, and the power to delegate authority is implied. Thus, if the co-brokerage agreement between Feist & Feist and Rosenthal is valid and Rosenthal was the efficient cause of the sale, then Art Metal is liable to the co-brokers for the commission agreed upon in the listing agreement.
The acts performed by Rosenthal  a phone call and mailing a letter, fall within the scope of the definition of a real estate broker in N.J.S.A. 45:15-3, and therefore under N.J.S.A. 45:15-1 Rosenthal was prohibited from performing those acts because he was not duly licensed at that time. Thus, Rosenthal's actions contravened the laws of New Jersey and were illegal. Kenny v. Paterson Milk & Cream Co., supra.
Accepting, for the sake of argument, that N.J.S.A. 45:15-3 extends the right of compensation to a broker licensed at the time the cause of action arose, the statute does not validate Rosenthal's acts. To hold that the acts were validated would strip the remaining sections of the Real Estate Brokers and Salesmen's Act of their regulatory purposes. See Pound v. Brown, supra, where the court stated:
*15 "It is a reasonable construction of the act to hold it is unlawful for anyone to engage in the business of a real estate broker without having secured a license, but he is not precluded from recovering compensation for his services if he had such license at the time his cause of action arose, although his contract may have been executed prior to that time when he had no license." (140 N.W.2d, at pp. 186-187; emphasis added)
The question presented is whether the co-brokerage agreement, which was in fact a contract to perform illegal acts, is unenforceable because of its illegality.
No New Jersey case is directly in point. However, Maraziti v. Corigliano, 29 N.J. Super. 86 (App. Div. 1953), deals with a similar problem, the enforceability of a contract that violated the Real Estate Brokers and Salesmen's Act  specifically, the enforceability of a listing agreement for what was considered an indefinite period of time. In that case defendant contended that the agreement was void and therefore unenforceable. To support that contention he cited Dale v. Palmer, 106 Cal. App.2d 663; 235 P.2d 650 (D. Ct. App. 1951), involving a contract between a real estate broker and a contractor, which stated that in consideration for the services of the broker in securing financing for the contractor, the contractor agreed to list all houses to be built by him with the broker and that such listing would start automatically when construction began and continue exclusively and irrevocably until 30 days after notice of completion had been filed. The court held that the contract violated the provisions of California's Business and Professions Code.
In discussing the Dale case Maraziti said:
"The court there held that section 10176 of the Business and Professions Code was highly penal in nature and that the contract under consideration, being founded upon an illegal act, was void ab initio. That case, as well as many other cases which might be cited, dealing with the subject of contracts contravening the policy of a public statute, would ordinarily lead us to the conclusion that the agreement here involved is unenforceable."
*16 Further:
"However, N.J.S.A. 45:15-17 contains a provision not found in the California act. The source of that provision is the original law of 1921, L. 1921, c. 141, § 13 and it reads:
`This act shall not be construed to relieve any person from civil liability or criminal prosecution under the laws of this State.'

* * * * * * * *
The Legislature, by virtue of the quoted language of the statute, indicated that although the Real Estate Commission might under N.J.S.A. 45:15-17(f) revoke a real estate broker's license because he entered into a contract such as here under consideration, the contract itself remains enforceable in a civil action."
This "non-escape" clause was the sole basis for the court's enforcing the contract in the Maraziti case.
However, the 1954 amendment to the Real Estate Brokers and Salesmen's Act, L. 1954, c. 193, § 2, repealed this clause, thereby making Dale v. Palmer, supra, applicable. Accordingly, the brokerage agreement between Feist & Feist and Rosenthal is void. See Brooks v. Cooper, 50 N.J. Eq. 761 (E. & A. 1893); Sharp v. Teese, 9 N.J.L. 352 (Sup. Ct. 1828); Lehigh Valley R.R. Co. v. United Lead Co., 102 N.J.L. 545 (1926); Gionti v. Crown Motor Freight Co., 128 N.J.L. 407 (E. & A. 1942); Stack v. P.C. Garage, Inc., 7 N.J. 118 (1951); 5 Williston, Contracts (rev. ed. 1937), § 1630, p. 4560 et seq. and 6 Ibid., § 1763, p. 5003 et seq.; 2 Restatement, Contracts, § 580, p. 1087 et seq. (1932); and New Jersey Annotations to the Restatement of the Law of Contracts, p. 337 et seq.
Therefore both Rosenthal and Feist & Feist are barred from recovering a commission  Rosenthal because he in fact acted without any authority and without any promises of or agreement for compensation from defendant Art Metal, and Feist & Feist because it did not initiate the sale or perform in any manner so as to appear to be the "efficient cause" of the sale.
However, it is claimed by Rosenthal that he introduced General Dynamics to the Art Metal property and therefore *17 General Dynamics' actions in consummating the sale directly with Art Metal was an interference with Rosenthal's prospective or potential economic advantage in that he was unlawfully deprived of his stock in trade and the fruits of his skill and labor.
The right to pursue the real estate brokerage business is a property right that the law protects against unlawful interference. Kamm, Inc. v. Flink, 113 N.J.L. 582 (E. & A. 1934); McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952). In McCue the court said:
"The action lies not only for the interference with the fulfillment of an executed contract but also for the malicious interference with the right to conduct negotiations which might culminate in such a contract." (at p. 597)
Thus, in order to successfully prosecute the cause for interference in the instant case two rights must be present: first, a right to pursue the real estate brokerage business, and second, a right to conduct negotiations which may have culminated in the sale.
Rosenthal, at the time of the telephone call and mailing of the plot plans and other information, had no right to pursue the real estate brokerage business. In fact, his actions were in contravention of the laws of New Jersey. Nor did Rosenthal have a right to conduct negotiations, for such a right grows out of either an agreement between the broker and the seller or buyer, or a valid co-brokerage agreement. Neither was present in the instant case.
At no time after Rosenthal had received his broker's license did he enter into a valid co-brokerage agreement with Feist & Feist. Therefore, at no time between Rosenthal's call to General Dynamics and the passing of title was there ever a valid agreement under which defendants would have been liable to Rosenthal for a commission. In other words, there was never a situation where Rosenthal could have gained economic advantage. Thus, logic compels the conclusion that there was no interference with a prospective *18 economic advantage. See Myers v. Arcadio Inc., 73 N.J. Super. 493 (App. Div. 1957).
The agreement between Art Metal and Feist & Feist and five other brokers gave rise to an agency relationship by which the brokers could attempt to obtain a purchaser, the commission being payable at time of closing to the broker who initiated the sale. Such an agreement in no way precludes the principal, Art Metal, from selling the property by itself to a purchaser not obtained by one of the brokers. Art Metal was therefore at liberty to contact and enter into negotiations with General Dynamics, and conversely, General Dynamics was at liberty to contact and enter into negotiations with Art Metal and eventually consummate a sale without paying Feist & Feist or any of the other five brokers a commission. See Louis Schlessinger Co. v. Rice, 4 N.J. 169 (1950).
Since neither Feist & Feist nor any of its employees or agents first informed General Dynamics of the Art Metal property, General Dynamics and Art Metal were at liberty to further their interests by negotiating for and consummating the sale of the Art Metal property. Such actions were within the scope of their rights and not acts tantamount to an interference with Feist & Feist's prospective or potential economic advantage. See Louis Schlessinger Co. v. Rice, supra; Harris v. Perl, 41 N.J. 455 (1964); 9 A.L.R.2d, p. 265, § 18.