NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1193-19T1

IN RE PROTEST OF
CONTRACT AWARD FOR
PROJECT A1150-08, N.J.
EXECUTIVE STATE HOUSE
COMPREHENSIVE
RENOVATION AND
RESTORATION

_____

> **APPROVED FOR PUBLICATION**
>
> **February 2, 2021**
>
> **APPELLATE DIVISION**

Submitted January 6, 2021 – Decided   February 2, 2021

Before Judges Sumners, Geiger and Mitterhoff.

On appeal from the New Jersey Department of Treasury, Division of Property Management and Construction, Project No. A1150-08.

Hedinger & Lawless, LLC, attorneys for appellant Hall Construction Co., Inc (Robert T. Lawless, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Division of Property Management and Construction (Melissa H. Raksa, Assistant Attorney General, of counsel; Beth L. Mitchell, Assistant Attorney General and Vivek N. Mehta, Deputy Attorney General, on the brief).

Stevens & Lee, PC, attorneys for respondent Daniel J. Keating Company (Maeve E. Cannon and Patrick D. Kennedy, of counsel and on the brief; Michael A. Cedrone, on the brief).

Peckar & Abramson, PC, attorneys for amicus curiae Associated Construction Contractors of New Jersey (Charles F. Kenny, on the brief).

The opinion of the court was delivered by

GEIGER, J.A.D.

Hall Construction Co., Inc. (Hall) appeals from the November 15, 2019 final agency decision of the New Jersey Division of Property Management and Construction (DPMC) rejecting Hall's bid protest and awarding the contract for the Comprehensive Renovation and Restoration of the New Jersey Executive State House, DPMC Project No. A1150-08 (the Project), to respondent Daniel J. Keating Company (Keating), the lowest bidder. The appeal presents an issue of first impression—whether a prime contractor bidder is required to name its building control systems subcontractor in its bid. For the following reasons, we dismiss the appeal as moot and also determine that Hall's arguments lack merit.

I.

We discern the following facts from the record. DMPC solicited competitive bids for the comprehensive renovation and restoration of the Executive State House in Trenton. Final specifications for the project were issued on August 20, 2019. Following several rounds of bidder questions,

DMPC issued clarifications and amendments to the specifications. DPMC then advertised for sealed bids for the Project. The advertisement stated:

> In accordance with N.J.S.A. 52:32-2, this project shall be bid as a single bid (lump sum all trades). Bidder must be classified themselves or name their classified sub-contractor(s) for the following trade(s):
>
> > Structural Steel (C029)
> > Plumbing (C030)
> > HVACR (C032)
> > Electrical (C047)
>
> Failure to list classified sub-contractors will deem the bid non-responsive.

DPMC opened electronic bids for the Project on September 17, 2019. Three bids were received. Keating's bid of $199,498,000 was the lowest. Hall's bid of $205,777,000 was the second lowest. Tutor Perini Building Corp.'s bid of $211,777,000 was the third lowest. Thus, Hall's bid was $6,279,000 higher than Keating's.

Both Keating and Hall used DMPC's bid proposal form (Bid Form). The Bid Form required bidders to identify the names and addresses of each subcontractor who would be performing certain classified trade works on the Project. This included identifying each subcontractor performing "HVACR[1] (C032) – Mechanical" and "HVACR (C032) – Duct Work." In addition, each

---

[1] "HVACR" refers to heating, ventilating, air conditioning, and refrigeration.

subcontractor listed on the Bid Form was required to be classified by DMPC for their trade at the time of the bid. Thus, subcontractors performing HVACR mechanical and HVACR duct work were required to be classified as HVACR (C032) contractors at the time of the bid. Notably, the Bid Form did not require bidders to identify subcontractors performing "C043 – Control Systems" work.

The day after the bid opening, Hall lodged its initial bid protest, contending that Keating's bid must be rejected and the contract awarded to Hall because: (1) Keating's named HVACR mechanical subcontractor, Devine Brother's, Inc. (Devine), exceeded its DPMC aggregate classification rating; and (2) a notary public with an expired commission notarized Keating's bid bond. Hall sent three subsequent letters to DPMC that provided further information about Devine and reaffirmed its argument that Keating's bid bond was deficient.

DPMC requested Keating provide documentation of Devine's uncompleted work as of the time of the bid opening. Keating contested Hall's protest and provided the requested information, including certifications from Keating's and Devine's respective presidents.

On October 7, 2019, DMPC issued a decision rejecting Hall's claims and declaring DPMC's intent to award the Project to Keating. DMPC found that

A-1193-19T1

Devine did not exceed its aggregate classification rating and that Keating's bid bond was not deficient as the notary's public's commission was still valid and in effect when the bid was notarized.

On October 11, 2019, Hall lodged a second bid protest that raised a new ground for rejection. Hall claimed Keating's bid was deficient because it failed to name the subcontractor it intended to use for the building control systems work, which must be performed by a DPMC classified C043 – Control Systems contractor. Hall contended that N.J.S.A. 52:32-2 requires bidders to identify on their Bid Form the subcontractors performing all possible facets of HVACR work, including subcontractors performing C043 – Control Systems work. Hall asserted that control systems work qualified as HVACR work.

On October 17, 2019, DPMC issued a second decision rejecting Hall's claim that Keating submitted a deficient bid. DPMC found that the Bid Form did not require bidders to identify subcontractors performing C043 – Control Systems work. It noted that C043 – Control Systems work is not included within the "umbrella trades" that classified HVACR contractors may perform. DMPC explained that "[i]t was neither a requirement of the bid nor the intent of DPMC to require bidders to identify a [c]ontrol [s]ystems subcontractor on this project." Hall requested a hearing to present its arguments.

The hearing was held before Hearing Officer Wayne J Martorelli on October 30, 2019. No witnesses testified. Hall and Keating abandoned their respective objections to the form of each other's bid bonds.

In support of its position that control systems fell under HVACR work, Hall argued: (1) Section 230900 of the Project specifications, which detailed the work to be performed by C043 – Control Systems subcontractor, was listed under Division 23 of the specifications, labelled "HVAC"; and (2) the regulations of a different State agency, promulgated under the HVACR contractor licensing statute, defines HVACR work to include "pneumatic air and/or direct digital controls." N.J.A.C. 13:32A-1.2. Keating maintained that Devine had not exceeded its DPMC aggregate classification. It also argued that modern-day control systems work was a distinctly different trade from HVACR work and that it was not required by N.J.S.A. 52:32-2 to identify its building control system subcontractor.

On November 15, 2019, Hearing Officer Martorelli issued written proposed findings and a recommendation to reject Hall's claims that Keating submitted a deficient bid. He found that "Keating's bid proposal identified two HVACR subcontractors: Bonland Industries, Inc. [(Bonland)], to perform the duct work at a price of $5,000,000, and Devine, to perform the mechanical work at a price of $10,000,000."

The hearing officer noted the following undisputed facts: (1) Devine's HVACR mechanical subcontract price and Bonland's HVACR duct work subcontract price did not include installation of the building control systems described under Section 230900 of the specifications; (2) Keating planned to enter into a subcontract with a subcontractor duly classified in the control systems work trade to install the building control systems; and (3) Keating excluded the control systems work from Devine's work scope to keep the value of Devine's current uncompleted work below a $15 million aggregate rating.

The hearing officer noted that Keating estimated the value of the building systems control work at roughly $2.5 million, such that inclusion of this work within Devine's mechanical subcontract would—when combined with its existing backlog of uncompleted work—exceed Devine's aggregate rating. Keating's exclusion of the control systems work from Devine's work scope is referred to "de-scoping," which is "a well-accepted practice in the industry." Hall did not argue that it was per se unlawful for Keating to reduce the scope of Devine's HVACR work.

Instead, Hall argued that Keating's intent to award the building control systems work to an unnamed subcontractor violated N.J.S.A. 52:32-2 because the control systems work fell under HVACR work and needed to be completed by a named HVACR subcontractor pursuant to N.J.S.A. 52:32-2(b)(2). In

7

response, Keating argued that the control systems work was not HVACR work "but rather work belonging to an entirely separate and distinct specialty trade." Keating intended to award the control systems work to a subcontractor classified by DPMC under the control systems trade classification.

The hearing officer explained that DPMC recognizes control systems, which require a different skill set and experience, as a separate and distinct trade apart from HVACR. He noted that Section 230900 of the specifications, which is 111 pages long, "describes a sophisticated, complex, and highly technical computerized and web-based control system, installation of which requires a level of specialized expertise, outside of the origins of the HVAC trade."

To emphasize the complexity of control systems work, the hearing officer also referenced the several qualification requirements for the control systems subcontractor listed in Section 230900. For example, Section 230900 requires the control systems subcontractor to have the sole and primary business of "designing, installing, and maintaining HVAC [c]ontrol Systems." It also requires the control systems subcontractor to be: (1) "a factory authorized [and] licensed representative for [the] Building Management System (BMS) manufacturer"; (2) "a fully certified [and] recognized installer/service provider by the [(BMS)] manufacturer"; and (3) "responsible

for the [c]omplete installation and proper operation of the control system" and collaboration with related trades. Lastly, the Responsibility Matrix included in Section 230900 demonstrates the responsibilities of the control systems subcontractor relative to the "Division 23 Mechanical [HVACR] Contractor" and the "Division 26 Electrical Contractor."

The hearing officer concluded that "Section 230900 clearly reflects the understanding that Building Control work is considered to be a stand-alone trade, separate and apart from HVACR." He reasoned that "[i]f the [control systems] work was intended to be performed under the supervision and control of the HVACR subcontractor, [Section 230900] would have said as much, rather than treating them as two separate and co-equal subcontract trades."

In addition, the hearing officer flatly disagreed with Hall's contention "that the [b]uilding [c]ontrol [systems] work must be deemed to be within the ambit of work which must be performed [by] one of the HVACR subcontractors named in the bid because Section 230900 is placed within Specification Division 23 – HVAC." He explained that "[a]s a matter of standard industry practice, construction contract specifications are organized according to a numbering system" known as Masterformat,[2] which "provides a

---

[2] Masterformat is a "system devised and regularly updated by a trade group, the Construction Specifications Institute."

uniform approach to organizing specification[s]" within sections of project manuals. The hearing officer pointed out that the Masterformat's preface specifically warns that:

> Masterformat's organizational structure . . . does not imply how the work is assigned to various disciplines, trades, or subcontractors. Masterformat is not intended to determine which portions of the project manual are to be prepared by a particular discipline. Similarly, it is not intended to determine what work required by the project is the responsibility of a particular trade.

For these reasons, the hearing officer found that the inclusion of Section 230900 within Division 23, which is labeled HVAC, was not meant to imply that the control systems work must be performed by a HVACR subcontractor. Instead, "Section 230900 clearly reflects the understanding that Building Control work is considered to be a stand-alone trade, separate and apart from HVACR." Thus, the control systems work "belongs to a separate trade, and . . . Keating may award that work directly to a subcontractor classified under C043-Control Systems, without violating the requirements of the bidding statute." The hearing officer determined that "the only work that must be performed by one of the identified HVACR subcontractors is limited to that work which a classified HVACR contractor is entitled to self-perform under classification C032." He emphasized that HVACR classified subcontractors

10

cannot perform control systems work since it falls within the province of a separate trade classification.

The hearing officer also rejected Hall's contention that HVACR licensing laws support its position, explaining:

> The definition of HVACR in the licensing statute does not include any language which could be remotely understood to include computerized building control systems. . . . As such, even if the regulations adopted under the licensing statute might be understood to require a HVACR license to perform such work, the enabling legislation does not. Even if it did, moreover, there is nothing in the law which suggests that the statutory HVACR licensing scheme was meant to supersede or override DPMC's authority to establish and enforce trade classifications[,]which serve the public interest by limiting bidding in a trade to contractors with the applicable expertise and experience.

He concluded that "the plain language of N.J.S.A. 52:32-2 . . . only requires the listing of work by subcontractor(s) who[] are installing the actual HVACR system and not the more specialized work of installing building management controls." He reiterated that "N.J.S.A. 52:32-2 dates back to 1915, decades before sophisticated building control systems that are the subject of this protest were invented." Instead, N.J.S.A. 52:32-2 only requires bidders to name subcontractors for "the steam and hot water heating and ventilating apparatus, steam power plants and all work kindred thereto."

The hearing officer also rejected Hall's argument that Devine exceeded its aggregate DPMC rating. He found that the award of the HVACR mechanical work would not cause Devine to exceed its $15,000,000 aggregate rating when combined with its backlog of existing work.

DPMC Director Christopher Chianese issued a November 15, 2019 final agency decision accepting and adopting in full the hearing officer's proposed findings and conclusions and affirming his recommendation to reject Hall's bid protest. The Director stated that Hall's bid protest was rejected and the Project "shall be awarded to [Keating]." Hall immediately requested a stay of the contract award pending appeal, which DPMC denied the same day. The Director found that Hall could not "satisfy [the] exacting standard for injunctive relief" adopted by our Supreme Court in Crowe v. DeGioia, 90 N.J. 126, 132-34 (1982). DPMC then issued a Notice to Proceed to Keating to begin work on the Project.

On November 18, 2019, Hall moved for leave to appeal, acceleration of the appeal, and an emergent stay of the contract award. On the same day, we granted Hall leave to file the motion and granted a temporary stay of the contract award. On December 4, 2019, we denied Hall's motions for a stay pending appeal and to accelerate the appeal. Five days later, we vacated the

12

temporary stay. We granted the Associated Construction Contractors of New Jersey's (ACCNJ) motion to appear as amicus curiae.

Keating subsequently moved to dismiss the appeal and DPMC moved for summary disposition. Hall moved to supplement the record. We denied all three motions but preserved Keating and DPMC's right to raise and brief the issue of mootness. Keating has been working on the Project since the temporary stay was vacated over thirteen months ago.

Hall raises the following points for our consideration:

POINT I

THE MERITS OF HALL'S APPEAL SHOULD BE CONSIDERED DESPITE HALL'S PREVIOUS REQUEST FOR A STAY OF THE CONTRACT AWARD HAVING BEEN DENIED.

POINT II

DPMC'S DECISION WAS ARBITRARY AND CAPRICIOUS AS IT WAS CONTRARY TO THE PLAIN LANGUAGE OF THE STATUTE, OTHER RELEVANT STATUTES[,] AND IGNORED HIGHLY RELEVANT EVIDENCE.

II.

Appellate courts have "a limited role" in the review of a final decision of an administrative agency. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). Final agency decisions will be upheld unless the decision is "arbitrary, capricious, or

unreasonable," or "not supported by substantial credible evidence in the record as a whole." Ibid. (quoting Henry, 81 N.J. at 579-80). In determining whether agency action is arbitrary, capricious, or unreasonable, we must examine:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).]

"The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).

The reviewing court "may not substitute its own judgment for the agency's, even though [it] might have reached a different result." Stallworth, 208 N.J. at 194 (quoting Carter, 191 N.J. at 483). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting In re Herrmann, 192 N.J. 19, 28 (2007)). The Appellate Division must "defer to an agency's technical expertise, its superior knowledge of its subject matter area, and its

fact-finding role." Futterman v. Bd. of Review, Dep't of Labor, 421 N.J. Super. 281, 287 (App. Div. 2011) (quoting Messick v. Bd. of Review, 420 N.J. Super. 321, 325 (App. Div. 2011)). Furthermore, an "agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to" deference. E.S. v. Div. of Med. Assistance & Health Servs., 412 N.J. Super. 340, 355 (App. Div. 2010) (quoting Wnuck v. N.J. Div. of Motor Vehicles, 337 N.J. Super. 52, 56 (App. Div. 2001)).

Deference is particularly appropriate when the "agency's expertise and superior knowledge of a particular field" is involved, Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992), including its reasonable statutory "construction in recognition of the agency's expertise," TAC Assocs. v. N.J. Dep't of Envtl. Prot., 202 N.J. 533, 544 (2010) (citation omitted). "When resolution of a legal question turns on factual issues within the special province of an administrative agency, those mixed questions of law and fact are to be resolved based on the agency's fact finding." Campbell v. N.J. Racing Comm'n, 169 N.J. 579, 588 (2001). Nevertheless, we are not bound by an agency's strictly legal determinations. A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (quoting Levine v. State Dep't of Transp., 338 N.J. Super. 28, 32 (App. Div. 2001)).

## III.

We first address whether the appeal is moot. Hall argues that the Appellate Division should consider the merits of this appeal notwithstanding our decision denying Hall's emergent appeal to stay the contract award. Hall contends that, absent resolution, the issue of statutory interpretation regarding public bidding will likely reoccur. Hall notes that the issue involves the "interpretation of the 'subcontractor naming' statute, which is implicated in virtually all public bids." It further asserts that "[a]lmost all governmental entities in this State have bidding laws which require the naming of subcontractors in the bid."

DPMC argues that Hall's appeal is "moot because the contract award has already been made, performance of the Project is well under way, and substantial expenditures of time and resources have been incurred by the State and Keating." DPMC also contends that this appeal "presents no recurring question of public importance that might otherwise evade judicial review."

Similarly, Keating argues that Hall's appeal is moot because the contract award has already been made and Keating has performed substantial work. Keating notes that any order to rebid or award the uncompleted portion of the Project to another bidder or otherwise interrupt the construction "would be completely untenable for the State in added cost, loss of warranty coverage

16

and most importantly, potential damage and irreparable harm to the historic State House due to work delay, loss of progress, weather impact, and change of contractors."  In addition, Keating argues that the DPMC's decision is entitled to deference and that this appeal does not present an issue capable of repetition while evading review.

"Moot or academic appeals are generally dismissed." Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J. Super. 160, 166 (App. Div. 2002) (citing Cinque v. N.J. Dep't of Corrs., 261 N.J. Super. 242, 243 (App. Div. 1993)). "[A] court will not decide a case if the issues are hypothetical, a judgment cannot grant effective relief, or there is no concrete adversity of interest between the parties."  Ibid. (citing Anderson v. Sills, 143 N.J. Super. 432, 437 (Ch. Div. 1976)).  It is the policy of this State to refrain from rendering advisory opinions or exercising jurisdiction in the abstract.  State v. Abeskaron, 326 N.J. Super. 110, 117 (App. Div. 1999).  Nevertheless, "[c]ourts occasionally will rule on such matters where they are of substantial importance and are capable of repetition while evading review."  Advance Elec., 351 N.J. Super. at 166 (citing Mistrick v. Div. of Med. Assistance and Health Servs., 154 N.J. 158, 165 (1998); Zirger v. Gen. Accident Ins. Co., 144 N.J. 327, 330 (1996)).  In that regard, an issue that implicates the public bidding process may be a matter of great public interest.  Id. at 167.

However, "[c]ontractual matters in which the State and its public entities engage must proceed with alacrity." Barrick v. State, Dep't of Treasury, 218 N.J. 247, 264 (2014). To that end, "[t]he State's business and the public interest in the State's contractual endeavors should not be unreasonably delayed while an unsuccessful bidder seeks another level of review." Ibid.

For example, in Statewide Hi-Way Safety, Inc. v. N.J. Dep't of Transp., we dismissed as moot an appeal challenging the award of a highway construction contract because the project was "substantially completed." 283 N.J. Super. 223, 226 (App. Div. 1995). In that case, we had denied the appellant's emergent application to stay the contract award and later, during oral argument, discovered that a substantial portion of the project had already been completed. Id. at 225. We recognized that it was "too late to order rebidding or to award the contract to another bidder" because any order to terminate the project "would be contrary to the public interest." Ibid. Consequently, we dismissed the appeal as moot but, nevertheless, addressed an issue raised on appeal because of its public importance. Id. at 226 (citations omitted). In addressing the remaining issue, we acknowledged the purpose of public bidding laws and the policy of strict compliance with both the substantive and procedural requirements of bid advertisements and specifications. Id. at 230-31. We held that the agency's failure to read the

18

elements of the bid constituted a material deviation from the governing statute and that a party with standing could, in the future, prevail under similar circumstances. Id. at 232.

Similarly, in Advance Electric, we considered the merits of an otherwise moot appeal even though the project had been completed. 351 N.J. Super. at 166-67. There, the unsuccessful bidder, a primary contractor, challenged the award of a public-school contract because there were no regulations governing subcontractor qualifications. Id. at 163. We concluded that the issue was capable of "frequent recurrence" until either the State Department of Education adopted regulations concerning subcontractor qualifications or judicial review of the issue. Id. at 167. We explained that, given the time it takes to hear and decide appeals, "future appeals on the same issue would not be decided until the construction was completed." Ibid.

"When a party seeks review of the award of construction contracts for projects of the type involved here, the attack must be made with the 'utmost promptitude.'" Richardson Eng'g Co. v. Rutgers, State Univ., 51 N.J. 207, 219 (1968) (quoting Bullwinkel v. City of E. Orange, 4 N.J. Misc. 593 (Sup. Ct. 1926)). Thus, "[w]henever public money is to be expended or if the successful bidder has made substantial preparations for the work, incurred considerable expenses and obligated himself still further in undertaking to carry out the

contract, ordinarily, review of the award will be denied unless sought promptly." Ibid. (citations omitted).

Here, unlike in Richardson Engineering, Hall's first protest promptly challenged the award of a public construction project. Id. at 219. On the same day that DPMC issued its final agency decision, Hall requested that DPMC stay its contract award to Keating pending appellate review. After DPMC denied the request, Hall swiftly moved for leave to file an emergent motion to stay the award and accelerate its appeal. Just a few days later, Hall filed this appeal.

On the other hand, Hall failed to satisfy the necessary factual and legal basis for a stay of the contract award under Crowe, 90 N.J. at 132-34. As a result, the Project commenced and continued while this case has been pending. The record on appeal includes the certifications of Craig Hunt, Keating's Director of Construction, and Raymond A. Arcario, the Executive Director of the New Jersey Building Authority.[3] They establish that Keating has already spent millions on the Project in preparation, demolition, renovation, and construction and has obligated itself still further. Keating has issued at least thirty-six subcontracts at an approximate total value of $161,000,000 for

---

[3] Pursuant to Rule 2:5-4(a), the certifications, which Keating filed in support of its motion to dismiss the appeal, are part of the record on appeal.

various trade works and nine purchase orders through May 2020. It has completed an estimated $10,245,000 worth of work on the Project by that date. Work continued thereafter at a substantial pace. Terminating Keating from the project would subject the Executive State House to risk of damage and generate significant additional costs to mitigate those risks.

Aside from the substantial work on the Project already performed by Keating and its numerous subcontractors and the large sums expended by Keating, the record demonstrates that setting aside the award of the contract would severely impact the Executive State House, jeopardize the work already completed, the Project in general, and risk damage to this historical structure. At this juncture, it would be "contrary to the public interest to void the contract already awarded even for any remaining uncompleted portion of the . . . construction." Statewide Hi-Way Safety, 283 N.J. Super. at 232. Because the Project has proceeded so far, the equities weigh heavily "against the provision of relief on the merits." Barrick, 218 N.J. at 264.

For these reasons, it is simply "too late to order rebidding or to award the contract to another bidder." Statewide Hi-Way Safety, 283 N.J. Super. at 225. Given these uncontroverted and compelling circumstances, "we must dismiss the appeal as moot." Id. at 226.

IV.

21

We may, nonetheless, address the issue raised by Hall if we deem it to be of sufficient public importance. <u>Ibid.</u> Statutory interpretation in public bidding disputes can be "a matter of great public interest." <u>Advance Elec.</u>, 351 N.J. Super. at 167. Because the issues raised in this appeal arguably involve a matter of public importance that is "capable of repetition while evading review," and for sake of completeness, we will address the merits of Hall's claims. <u>Abeskaron</u>, 326 N.J. Super. at 117 (citations omitted).

We find no merit in the arguments raised by Hall in this appeal. We conclude that the DPMC's final decision is not arbitrary, capricious, or unreasonable and is supported by substantial credible evidence in the record as a whole. The record amply supports Hearing Officer Martorelli's comprehensive and well-reasoned proposed findings and conclusion, which were accepted and adopted in their entirety by DPMC. Applying our deferential standard of review, we discern no factual or legal basis to overturn the DPMC's final decision.

N.J.S.A. 52:32-2 governs the advertisement and bidding procedures for construction projects involving state buildings that exceed $2000. The statute permits separate plans and specifications for:

> (1) the plumbing and gas fitting and all work kindred thereto; (2) <u>the steam and hot water heating and ventilating apparatus, steam power plants and all work kindred thereto</u>; (3) electrical work; (4) structural steel

and ornamental iron work; and (5) general construction, which shall include all other work and materials required for the completion of the project.

[N.J.S.A. 52:32-2(a) (emphasis added).]

In turn, N.J.S.A. 52:32-2(b) permits DPMC to advertise for bids for a "single over-all contract, in which case there shall be set forth in the bid the name or names of all subcontractors to whom the bidder will subcontract for the furnishing of any of the work and materials specified in" N.J.S.A. 52:32-2(a)(1) to (4). Each subcontractor for the four trades enumerated in N.J.S.A. 52:32-2(a) must be "qualified in accordance with chapter 35 of Title 52." N.J.S.A. 52:32-2(b)(2).

The DPMC's final agency decision properly interpreted the subcontractor naming provisions of N.J.S.A. 52:32-2. Keating met those requirements. The plain language of the statute is not unclear or ambiguous and cannot be reasonably interpreted to require naming the subcontractors intended to perform building control system control work. Building control systems work is not a trade within the umbrella of HVACR work under the statute. On the contrary, Keating was only required to identify subcontractors who would install the actual HVACR system but not those who would engage in a separate trade by performing the more specialized work of installing building management control systems.

DPMC was correct in rejecting Hall's claim that the phrase "all work kindred thereto" found in N.J.S.A. 52:32-2 should be interpreted to include building control systems work. Hall's overly broad interpretation of the statute does not comport with the modern realities of complicated building control systems, which did not exist when the statute was adopted in 1915. It also attempts to incorporate different trade works under the umbrella of HVACR work. See Fisher v. Bd. of Educ., 94 N.J. Super. 359, 366-67 (Ch. Div. 1967), aff'd, 95 N.J. Super. 18 (App. Div. 1968) (interpreting an analogous provision in N.J.S.A. 18:11-10 (now repealed)).

Hall's argument under N.J.S.A. 52:32-2 is likewise without merit. N.J.S.A. 52:35-11 provides that regulations may be adopted "for controlling the qualifications of prospective bidders. The regulations may fix the qualification requirements for bidders according to available capital and equipment, and with due regard to experience and records of past performance." In turn, regulations have been promulgated standards for the "classification and qualification" of all bidders for state contracts. See N.J.A.C. 17:19-1.1 to -5.11. The regulations define "classification" as "the process and product of assigning specific construction categories or trades and the aggregate ratings that define the ineligibility of firms to engage in public work as determined by the DPMC in accordance with this chapter." N.J.A.C.

17:19-1.1. The 115 "trades for which an applicant may request classifications are as listed on the DPMC-27." N.J.A.C. 17:19-2.7(b).

DPMC has created classifications for various construction trades that impose prior experience standards as a condition of classification. N.J.A.C. 17:19-2.7. DPMC has created HVACR (C032) for "steam and hot water heating and ventilating apparatus" work. It has also created Electrical (C047). DPMC's "Request for Classification Form" (Form DPMC-27) lists all the trades for which a contractor can seek prequalification, including HVACR (C032), Electrical (C047), and Control Systems (C043). N.J.A.C. 17:19-2.7(b). For the HVACR and electrical classifications, Form DPMC-27 sets forth specific classification standards, including the additional classifications they are automatically deemed classified to perform.

Contractors classified in HVACR and electrical are eligible to bid on contracts that include control systems work but must retain a subcontractor classified in such trade to perform that work. Also, Form DPMC-27 requires subcontractors to possess special licenses to perform work under the HVACR and electrical trade classifications whereas the control systems classification requires no special license.

DPMC's Bid Form requires the bidder to identify all classified subcontractors who would be performing HVACR (C032) – Mechanical and

HVACR (C032) – Duct Work. Because building control systems are not included within N.J.S.A. 52:32-2, DPMC did not require bidders to identify C043 classified subcontractors to be named in the bid.

As correctly observed by the hearing officer, the Project's building control systems work is highly technical, specialized, and expansive. It requires integrating multiple systems installed by various other trades, including fire suppression, emergency access, and electrical systems. DPMC's classification system categorizes building control systems and HVACR work as wholly different trades that require different experience and expertise. This distinction is manifested in footnote 8 of DPMC Form-27, which provides that a contractor classified in trade C032 (HVACR) "shall also be eligible to bid on contracts including the following [certain] specialty trades,[4] but shall be required to engage a subcontractor who is classified in the specialty trades listed: C043, C090." Thus, footnote 8 reflects that HVACR C032 contractors are not classified to perform Control Systems (C043) work and must engage a classified Control Systems C043 contractor to perform that trade work unless

_____

[4] Classified HVACR contractors are deemed automatically classified in the following trades: Oil & Gas Burners (C031), Boilers (New Repair) (C033), Insulation (Mechanical) (C041), Fire Suppression Systems (C042), Sheet Metal (Mechanical) (C046), and Dust Collectors (C109). Similarly, classified Electrical (C047) contractors are deemed to be classified in Communications Systems (C048), Fire Alarm/Signal Systems (C049), and Security/Intrusion Alarms (C050) under Footnote 9.

they have been separately classified to perform Control Systems (C043) work. Overall, footnotes 8 and 9 clearly demarcate the distinction between the HVACR (C032), Electrical (C047), and Control Systems (C043) trade classifications.

In addition, Hall argues that Keating engaged in impermissible bid shopping by not identifying its Control Systems (C043) subcontractor in its bid. We disagree. Although N.J.S.A. 52:32-2 requires that a prime contractor's bid identify its four prime subcontractors to discourage bid shopping as to those trades, that requirement does not extend to other subcontractors such as Control System (C043) subcontractors. To the contrary, as correctly noted by the hearing officer, HVACR (C032) subcontractors "cannot self-perform building controls system work but instead must subcontract with" a classified Control System (C043) contractor. Accordingly, bid shopping for this trade work is permitted.[5]

Hall argues that DPMC's decision was contrary to the Licensing Law governing HVACR contractors. Hall contends that N.J.S.A. 52:32-2 and N.J.S.A. 45:16A-2, the HVACR Licensing Law, should be read in pari materia

---

[5] Notably, Hall's own named HVACR subcontractor is not classified by the DPMC to perform Control Systems (C043) work and Hall did not identify a separate Control Systems (C043) subcontractor in its bid. Thus, were Hall the lowest bidder, it would have had to have retained a separate, unnamed Control Systems (C043) subcontractor, allowing it to engage bid shopping.

because they deal with the same subject matter. Hall contends that under the Heating, Ventilating, Air Conditioning and Refrigeration Contracting License Law, N.J.S.A. 45:16A-1 to -41, HVACR work includes control systems work by definition. Hall explains that the definition of HVACR, under N.J.S.A. 45:16A-2, includes "controlling the temperature, humidity and cleanliness of air" and "control[ling] piping for the control of air, liquid or gas temperatures." We are unpersuaded.

Hall's position is also contrary to the rules of statutory construction. These statutes were neither passed at the same time nor belong to the same Act. Marino v. Marino, 200 N.J. 315, 330 (2009). The statutes neither relate to the same subject matter nor serve the same purpose or objective. See ibid. The HVACR Licensing Laws created a Board of Examiners to establish HVACR licensing requirements and to oversee HVACR contractors. N.J.S.A. 45:16A-3 and -4. In contrast, N.J.S.A. 52:32-2 requires bidders to list in their bid proposals the prime subcontractors that will perform electrical, plumbing, structural steel, and HVACR trade work but not control systems trade work. Mere "'adventitious occurrence[s] of like or similar phrases, or even of similar subject matter, in laws enacted for wholly different ends will normally not justify applying the rule' of in pari materia construction." Marino, 200 N.J. at 331 (quoting State v. DiCarlo, 67 N.J. 321, 325 (1975)).

28

Lastly, amicus curiae ACCNJ asserts a new argument not raised during the hearing that is contrary to the position taken by the parties.  ACCNJ argues that a general contractor is not permitted to directly retain the subcontractor that will perform the building control systems work.  Instead, that subcontractor must be retained by either a licensed HVACR or electrical subcontractor.  In explaining his findings, the hearing officer noted that "the subcontractor performing the Control System work need not be identified in the bid, regardless of whether that subcontractor is retained directly by the prime contractor or by the HVACR subcontractor."

"[A]s a general rule, an amicus curiae must accept the case before the court as presented by the parties and cannot raise issues not raised by the parties."  State v. O'Driscoll, 215 N.J. 461, 479 (2013) (quoting State v. Lazo, 209 N.J. 9, 25 (2012)).  See also Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:13-9 (2021) (same); State v. J.R., 227 N.J. 393, 421 (2017) (declining to "consider arguments that have not been asserted by a party, and are raised for the first time by an amicus curiae").  We decline to consider this new argument that was not asserted by the parties before the hearing officer or the DPMC and is raised for the first time by an amicus.

To the extent we have not specifically addressed any of Hall's remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

In sum, we dismiss the appeal as moot.  In addition, based upon our careful review of the record and applicable legal principles, and applying our deferential standard of review, we discern no basis to declare Keating's bid fatally deficient or to set aside the contract award.

Appeal dismissed as moot.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION